# Davis *v.* Memphis & Charleston Railroad Co.

87 . 633
:100   672
:102   645

*Statutory Action in nature of Ejectment.*

1. *Corporate existence of railroad company under provisions of charter.*—Where the corporate existence of a railroad company is, by its original charter, limited to fifty years, but, by an amendatory act, it is provided that, at the expiration of each subsequent term of ten years,

[Davis v. Memphis & Charleston Railroad Co ]

the State shall have the right, at its election, to take all the property of the company at the par value of its stock, and, if this election is not made within twelve months, then the charter of the company shall be continued for another term of ten years; the corporation has a capacity of perpetual existence, unless the election to purchase is exercised by the State.

2. *Conveyance to railroad company, for right of way.*—A conveyance of a strip of land to a railroad company, "for the term of fifty years, and so long thereafter as its charter shall continue," when the company has the capacity of perpetual existence, on default by the State to exercise a right of election to purchase its property, and also has power to condemn lands for a right of way under a writ of *ad quod damnum*, conveys the same interest and estate that would have been acquired by a judgment of condemnation under such writ.

3. *Condemnation of right of way by railroad company; nature of estate acquired; transfer to another corporation.*—A judgment condemning lands for a right of way, under *ad quod damnum* proceedings at the suit of a railroad company, vests in the company an estate and interest commensurate with its corporate existence; and this estate passes to purchasers at a sale under a mortgage executed by the company, who are afterwards incorporated as a railroad company, or to another corporation, its assignee, so long as the contemplated use of the right of way is continued.

4. *Dissolution of corporation.*—When its corporate existence is not limited by charter, and there is no voluntary surrender of its franchises, a private corporation will not be deemed dissolved until its dissolution is judicially ascertained; neither its insolvency, nor a sale of all its property, nor cessation to do business, extinguishes its franchises; and while a voluntary surrender of its franchises from continuous non-user for a long time may be presumed, neither its dissolution, nor a forfeiture of its charter, can be declared in a collateral proceeding.

5. *Conveyance of base or qualified fee.*—A conveyance of a qualified, base or determinable fee in lands, leaves in the grantor only a possibility of reverter, which, though it may descend to his heirs, can not be granted or assigned so as to vest a title on which ejectment may be maintained.

6. *Presumption of title from lapse of time.*—After continuous *user* of a right of way by a railroad company for a period of fifty years, a grant in fee simple, or a judgment of condemnation under a writ of condemnation, will be presumed, though the land is part of a sixteenth section.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by Mrs. Ann Davis, a married woman, who was a daughter of James Fennell, deceased, against the Memphis & Charleston Railroad Company, to recover a strip of land one hundred feet wide, which was the defendant's road-bed and right of way, and was situated in sections sixteen (16) and twenty-one (21), township five (5), range five (5), west; and was commenced on the 14th October, 1887. The case was submitted to the court without a jury, on an agreed statement of facts; and the court rendered judgment for the defendant. Among the agreed facts were the following: "The north-west quarter of said

section twenty-one (21) was patented by the United States to Joseph Sykes, and the south-west quarter of said section sixteen (16) was granted by Congress to the State of Alabama, and by the State patented to individual purchasers in 1839. James Fennell acquired the legal title to said lands, and went into possession thereof, except that portion now sued for, under purchase from Joseph Sykes in 1843, and held possession until his death; and in 1857, after his death, on the division of his estate, said lands were allotted to the plaintiff, his daughter, who has held such possession ever since." The deed from said Sykes and wife to Fennell, which was in evidence, expressly excepted "the railroad running through said lands, but any benefit or reversion therefrom which may accrue to go to the said Fennell." On the 7th February, 1834, Sykes had conveyed a right of way through his lands, describing them as being "in sections twenty-one (21) and (18)," to the president and directors of the Tuscumbia, Courtland & Decatur Railroad Company, "and their successors in office, for the term of fifty years, and so long thereafter as their said charter shall continue;" and the defendant claimed as the assignee and successor of said railroad company, under conveyances and legislative acts, the material portions of which are stated in the opinion of this court. The judgment of the court below, to which the plaintiff excepted, is here assigned as error.

F. P. WARD, and L. W. DAY, for appellant.

R. C. BRICKELL, and MILTON HUMES, contra.

CLOPTON, J.—Appellant brings the statutory real action to recover possession of a strip of land one hundred feet in width, situated in the south half of section 16, and north-west quarter of section 21, in township 5, range 5 west, which covers the road-bed and right of way of the Memphis & Charleston Railroad Company. The parties deduce title, respectively, in this wise: The Tuscumbia, Courtland & Decatur Railroad Company was incorporated by an act of the General Assembly, January 13, 1832. By the terms of the act, the corporate existence was limited to a period of fifty years.—Acts 1831-32, p. 67. On November 10, 1832, the act of incorporation was amended. The fourth section of the amendatory act provides: "That, at the expiration of fifty years from the date of the said charter, and at each

subsequent term of ten years, the State shall be authorized to take all of said works, cars and estate of every description whatever, belonging to said company, at the par value of the stock of said company, if the State should elect so to do; but, if the State shall not, within one year after the expiration of any term of ten years, take said works, then the charter of said company shall be continued for a subsequent term of ten years."—Acts 1832-33, p. 7. The manifest operation of the amendatory act is, to remove the limitation of fifty years, as provided in the original act of incorporation, and to create a corporation endowed with capacity of perpetual existence, unless the State shall exercise its reserved right of purchase.

Joseph Sykes sold and conveyed, February 7, 1834, that part of the land in controversy, which is in the north-west quarter of section 21, to the Tuscumbia, Courtland & Decatur Railroad Company. The *habendum* clause of the conveyance reads: "*to have and to hold the said tract of one hundred feet of land above described, to the said president and directors of the said Tuscumbia, Courtland & Decatur Railroad Company, and their successors in office, for the term of fifty years, and so long thereafter as their charter shall continue.*" On April 29, 1843, Sykes sold and conveyed to James Fennell the half and quarter sections which include the land in suit. The deed contains the following exception: "*The railroad running through these lands excepted, but any benefit or reversion therefrom, which may accrue, to go to the said Fennell.*" The plaintiff claims by descent from her ancestor, James Fennell.

The conveyance from Sykes to the railroad company must be construed in connection with, and in reference to the amending act, providing for an indefinite continuation of the charter of the company, subject to the contingency of the State's exercise of the privilege to take the property at designated successive periods. By the fifth section of the original act of incorporation, the company was authorized to contract for, and receive conveyances of lands, stone or gravel, which might be required in the construction of the road; and if the owner and the company could not agree as to price, proceedings in condemnation were authorized. By this provision, *ad quod damnum* proceedings could be instituted only after an ineffectual effort to agree as to the price. The land was purchased from Sykes, and the conveyance received under this authority of the charter.

[Davis v. Memphis & Charleston Railroad Co.]

The estate or interest in land, acquired and taken for public use, is to be determined by the nature and extent of the use; the intendment being, that the estate or interest shall be commensurate with the purpose and duration of the use for which it is taken, when not otherwise provided. The operation of the amendment being to extend the duration of the corporate life, from a limited term of fifty years, to an existence uncertain and indefinite, but which might endure forever, had the land been taken and acquired under proceedings in condemnation, the company would have obtained an estate therein co-existent with the possible continuation of the corporate life. The acquisition of an estate in land for a public use, by the exercise of the right of eminent domain, is in the nature of a transfer by the State, to which the statute annexes the limitation or condition, that the estate acquired shall continue during the existence of the corporation, and so long as the land may be used for the purpose for which it is taken. The land having been contracted for, and the deed received from Sykes, by the same authority under which land may be condemned when the owner and the company can not agree as to price, and the deed having been made after the amendment of the charter, and containing the limitation—"for the term of fifty years, and so long thereafter as their said charter shall continue" substantially the same as that which is implied when land is condemned—his grant should be regarded as intended to have, and as having, the same legal effect and operation as condemnation under *ad quod damnum* proceedings. At common law, the general rule is, that real estate owned and possessed by a corporation at the time of its dissolution, reverts to the original owner. But this rule does not extend to real estate of which the corporation may have been divested by process of law during its existence. "It is the public use for which the land is taken, and so long as it is used for railroad purposes, it is immaterial what company or what individuals operate it."—2 Wood's Railway Law, § 242; *State v. Rives*, 2 Ired. 297; *Noll v. Dubuque B. & M. R. R. Co.*, 32 Iowa, 66; *Pollard v. Maddox*, 28 Ala. 321.

In the construction of the conveyance to the railroad company, as of all other written contracts, the intent of the parties becomes the primary inquiry; in ascertaining which, reference should be had, in connection with the terms employed, to the occasion, the relative position of the parties, and the objects designed to be accomplished. The Tus-

cumbia, Courtland & Decatur Railroad Company was among the earliest incorporated, and its railroad among the first built in this country. Its public necessity and utility were the moving considerations for its creation. These considerations, and its great convenience and benefit to the grantor, moved him to sell and convey the lands, which was evidently intended to form and constitute a part of the railroad track. By the contract between him and the company, the land was devoted to railroad uses—uses desired and contemplated to be permanent, whether or not the State exercised its reserved right of purchase. The estate conveyed, and its continuance, were designed to be commensurate with the uses to which the land was devoted. The term *charter* is not employed in the deed in its narrowest and most restricted sense, and should not be construed as referring only to the act of the legislature creating the corporation, which for convenience is denominated the charter, or to the mere corporate name. The signification is more comprehensive, and includes the rights, powers, privileges, immunities and franchises granted—the substance and not the shadow.

Under a decree made by the United States District Court, on a bill to forclose a mortgage executed by the company, the railway, rolling-stock, shops, machinery and franchises of the Tuscumbia, Courtland & Decatur Railroad Company were sold by the marshal, September 22, 1847, and purchased by David Deshler. The sale was reported and confirmed by the court, and a conveyance executed to Deshler. On February 10, 1848, Deshler and his associates were incorporated by an act of the General Assembly, under the name of the Tennessee Valley Railroad Company. The preamble of the act recites the sale of the railroad, and all the property of the Tuscumbia, Courtland & Decatur Railroad Company, under a decree of the United States District Court, and that Deshler became the purchaser. The third section of the act provides, that upon payment of the purchase-money, all the right, title, interest and property in the latter company, including the right of way, and all rights, franchises and privileges, shall vest in the Tennessee Valley Railroad Company. In 1848, Deshler sold and conveyed to the latter company the railway, and all the property and franchises, purchased by him at the marshal's sale. The tenth section of the act made similar provisions for the continuance of the charter, subject to the State's exercise of the right to purchase at the expiration of fifty years, and at suc-

cessive periods of ten years, as contained in the charter of the Tuscumbia, Courtland & Decatur Railroad Company. Acts 1847-48, p. 79.

The Memphis & Charleston Railroad Company was incorporated January 7, 1850. By the seventh section it is provided: "It shall be lawful for the company, hereby incorporated, to acquire by purchase, gift, release or otherwise, from any other company, all the rights, privileges and immunities of said company, and possess and enjoy the same as fully as they were or could be possessed. or enjoyed by the company making the transfer."—Acts 1849-50, 183. Under this legislative authority, the company acquired by purchase and conveyance from the Tennessee Valley Railroad Company all their property, including the road-bed, and all the franchises, privileges and immunities, which they had used or enjoyed under or by virtue of their charter. It thus appears that the Memphis & Charleston Railroad Company has acquired by legislative authority all the property and franchises of the Tuscumbia, Courtland & Decatur Railroad Company, including their right to the lands in controversy, and the franchise to use them permanently for railroad purposes, unless the State exercises its reserved right of purchase. · It is admitted that the Tuscumbia, Courtland & Decatur Railroad Company entered upon, and took possession of the lands under the conveyance from Sykes, and remained in possession, using them as a part of their roadbed, until the marshal's sale in 1847. It is further admitted, that Deshler entered into possession, and operated the railway until he sold and conveyed to the Tennessee Valley Railroad Company, which had possession and operated the railroad, until they sold and conveyed to the Memphis & Charleston Railroad Company; and that the last named company had possession and operated the railway ever since.

There has been a continuous *non-user* of the franchise by the Tuscumbia, Courtland & Decatur Railroad Company, for more than forty years. When corporate existence is not limited to a specified period, and there is no voluntary surrender of the franchises. a private corporation will not be deemed dissolved until its dissolution is judicially ascertained. The franchises are not extinguished by insolvency, or a sale of all the corporate property, or by a mere cessation to do business. It may be, that after a continuous *non-user* for so long a time, a voluntary surrender of its franchises will be presumed; but neither its dissolution, nor its

charter can be declared forfeited in a collateral proceeding· This can be done only by a direct proceeding by the State; though, on its insolvency, or a sale of all the corporate property, it will be deemed dissolved for the purpose of protecting and enforcing the rights of third persons.—*Duke v. Cahaba Nav. Co.*, 16 Ala. 372; 2 Kent, 312; 2 Morawetz Corp. §§ 1011-1015. There has been no voluntary surrender, nor judicial forfeiture, of the charter of the Tuscumbia, Courtland & Decatur Railroad Company. Their chartered rights, immunities and franchises have been continued and perpetuated by the legislative acts referred to, and now exist in the Memphis & Charleston Railroad Company, which company possesses and enjoys them as fully as they were or could have been enjoyed by the Tuscumbia, Courtland & Decatur Railroad Company. The latter corporation has ceased to do business under its corporate name, but the rights and franchises granted by the charter still exist, and are exercised by the defendant, though under a different corporate name. The charter, as employed in the conveyance of Sykes—representing and expressing the chartered rights—continues.

Independent of this conclusion, plaintiff has not such title to the lands in controversy as will maintain ejectment, or the corresponding statutory real action. A fee is said to be qualified, base or determinable, when it is made to determine, or liable to be defeated, on the happening of some contingent event or act. Kent defines a qualified, base or determinable fee, as "an interest which may continue forever, but the estate is liable to be determined without the aid of a conveyance, by some act or event circumscribing its continuance or extent. Though the object on which it rests for perpetuity may be transitory or perishable, yet such estates are deemed fees, because, it is said, they have a possibility of enduring forever."—4 Kent, 10; Tiedeman Real Prop. § 44. By the original act of incorporation, the Tuscumbia, Courtland & Decatur Railroad Company had capacity "to purchase, receive and hold, sell, convey and confirm real or personal estate, as natural persons"—to acquire a fee simple. As we have shown, the act amending the charter endowed the company with the capacity of possible perpetual existence. The limitation in the conveyance of Sykes, that the estate granted shall continue so long as the charter shall continue, constituted a defeasible or determinable quality, with a possibility of the estate enduring forever. Purged of this quality, the

[Davis v. Memphis & Charleston Railroad Co.]

estate would have been a fee simple. But its existence in the grant constitutes it a base, qualified, or determinable fee. *State v. Brown*, 27 N. J. L. 13.

When a person grants only a portion of whatever estate he may have, the portion granted to determine on the happening of some event, in order that the residue may remain in the grantor as a reversion, the determinability of the estate carved out must depend on an event which, by the usual course of nature, must happen at some time. If it is defeasible or determinable on a contingency or event which, by possibility, may never occur, the interest remaining in the grantor is merely "a possibility of reverter." Conditions in a deed are reserved to the grantor, and only he, or his heirs, can take advantage of a breach. "Nothing which lies in action, entry or re-entry, can be granted over, in order to discourage maintenance." A possibility, or other thing not in possession, or vested in right, is not, by common law, the subject of an operative grant or assignment to strangers. "Where one grants a base or qualified fee, since what is left in him is only a right to defeat the estate so granted upon the happening of a contingency, there is no reversion in him; that is, he has no future vested estate in fee, but only what is called a naked possibility of *reverter*, which is incapable of alienation or devise, although it descends to his heirs." Tiedeman Real Prop. § 385; *Nichol v. N. Y. & E. R. R. Co.*, 2 Kernan, 121; s. c., 12 Barb. 460; *Ruck v. Rock Island*, 97 U. S. 693. It results, that no reversion remained in Sykes, which could be the subject of grant or assignment; and that Fennell, by his conveyance, acquired only a beneficial interest in the possibility of *reverter*, which is insufficient to maintain ejectment.

The record does not disclose in what manner the Tuscumbia, Courtland & Decatur Railroad Company acquired the portion of the land in controversy which is in section 16. But, after continuous adverse possession, under claim of right, by the company, and the derivative purchasers, including the defendant, for a period of forty years, we would presume, if necessary, a grant in fee simple, or that the land was taken by proceedings in condemnation.—*McArthur v. Carrie*, 32 Ala. 75; *Matthews v. McDade*, 72 Ala. 377; *Gosson v. Ladd*, 77 Ala. 223.

Affirmed.