[Gardner *et al.* v. Mobile & Northwestern Railroad Co.]

fendant's counsel would state, in his place, that the defense was a meritorious one, which the counsel declined to do, saying that his pleas were on file, and that they attested the legal sufficiency of his defense. It would be a very unwholesome rule that would deny to the court the right to strike out the pleas in such a case.

In *Atlantic Glass Co. v. Paulk*, 83 Ala. 405, and *Elyton Land Co. v. Morgan*, 88 Ala. 434, we ruled that the objection that a judgment was by default instead of *nil dicit*, relates to a mere matter of form, and is without merit, especially when made by the defendant. It may be different when the plaintiff complains.—83 Ala., *supra*.

The judgment of the district court is affirmed.

# Gardner et al. v. Mobile & Northwestern Railroad Co.

*Bill in Equity to vacate Sale of Lands under Executions, and to enjoin Trespass.*

1. *Assignment of judgments.*—Judgments, having the assignable qualities of choses in action, may be transferred by parol or in writing; and such assignment, though not made in the mode prescribed by statute, (Code, § 2927), passes an equity in said judgment entitling the assignee to have executions issued thereon.

2. *Errors in mandate of executions.*—Errors in the mandate of an execution are mere irregularities, incapable of injury to the defendant in execution, and, because of such irregularities, a court of equity will not interfere to vacate a sale made by a sheriff under such executions.

3. *Assignment of judgment by attorney; authority inferred from long acquiescence.*—An atttorney can not, without special authority, assign a judgment he may have obtained for his client; but where the client has silently acquiesced for several years in an assignment by his attorney of the judgment recovered, it will be inferred that such attorney had special authority to make the assignment, or that there was a subsequent ratification thereof by the client.

4. *Execution issued on dormant judgment; voidable and not void.*—An execution issued on a judgment that is dormant, by reason of the lapse of ten years without the issuance of an execution thereon, is not void, but voidable, and will be quashed by application seasonably made to the court issuing it.

5. *Vacating sale under voidable execution; remedy at law and in equity.*—Where a sale of lands under an execution issued on a judgment at law is sought to be vacated because of irregularity in the issuance of the execution—the judgment having become dormant—the court from which the execution issued has exclusive jurisdiction to set aside such sale; and, in the absence of accident, surprise, mistake or fraud, or some fact or circumstance affecting the sale itself, a court of equity will not interfere to vacate said sale.

6. *When execution may be levied on right-of-way of a railroad.*—Where a railroad corporation has become inert, and has ceased all use of its franchises and all performance of its public duties, lands owned by it in fee as a right-of-way are subject to be levied upon under an execution at law.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WM. H. TAYLOE.

The bill in this case was filed on December 11th, 1890, by the Mobile & Northwestern Railroad Company against F. G. Ruffin, F. G. Bromberg, Lucy R. Gardner, individually, and as the administratrix of W. H. Gardner, deceased, and Mary Henry, individually, and as the executrix of Thomas Henry, deceased. The prayer of the bill was to cancel and remove certain deeds of conveyance as a cloud on the title to property, alleged to belong to the complainant, and for an injunction to prevent the commission of trespasses by some of the defendants.

The bill averred that the complainant was incorporated under the general laws of the State of Alabama, on July 6th, 1870 ; that as such corporation it was authorized to build its road from Mobile in a northwesterly direction, and that for that purpose it had secured for its uses, and for its right-of-way, certain property described in the bill ; that on this said property it had constructed its road-bed, had built bridges, &c., and that for a time it had operated its road thereon. It was further averred that for a while work on the Mobile end of its line had been discontinued, and that work had commenced on the Mississippi division of its road, where something over 20 miles of road was built, which was operated up to a recent period, when the complainant was deprived of the use of that part of its road by the foreclosure of a trust deed given to secure its bonded indebtedness, but that the Alabama corporation has remained in possession of its line of road, and that it has never abandoned its franchises, rights, or property. It

was also averred in the bill that adverse claim to some of the property and franchises of the complainant in Mobile county was set up by the respondents; that such adverse claim was founded upon certain deeds from Wm. H. McIntosh, as trustee, who claimed under deeds from the sheriff of Mobile county, to Lucy Gardner, administratrix, and Mary Henry, executrix, as aforesaid. It was further averred that the deed from the sheriff to McIntosh, as trustee, was made pursuant to the sale made by the sheriff on the 8th of October, 1888, under two executions issued out of the circuit court of Mobile county, August 29th, 1888. One of these executions was in favor of Wm. H. McIntosh, assignee of Mary Henry and Lucy Gardner, as said representatives, on a judgment recovered against complainant, March 23d, 1874, by Wm. G. England & Son, and was for $2,500. The other issued August 29th, 1888, in favor of said Wm. McIntosh, as assignee of Mary Henry, as executrix of Thos. Henry, deceased, on a judgment recovered in said court 24th June, 1875, by Walter Burgess, against complainant for $7,563.33. Sales by the sheriff under said executions were made October 8th, 1888. The bill charges that no valid sale of the property and franchises described was made by the sheriff; first, because the property and franchises of complainant levied on and sold by the sheriff were not subject to levy and sale under executions from the circuit court; secondly, because said judgments were paid and satisfied before said executions were issued; and, thirdly, because said executions were not valid and lawfully issued. The bill avers that said pretended sales and said deeds cast a cloud, however, upon complainant's said property and franchises. The bill charges that the said Ruffin is trespassing upon complainant's said property by dragging a chain along its road bed, by driving stakes in its ground, asserting the said property is his, and not the property of complainant, and that he is threatening to drive off the employés of complainant from its said property.

The respondents demurred to the bill, upon the ground that the complainant had a plain and adequate remedy at law; and by way of pleas set up that no such corporation as the complainant existed, and that the bill was filed without authority.

Answering said bill the respondents admitted that

such a corporation as the complainant was incorporated, but alleged that it had lost its charter by failure to comply with certain statutory requirements, and that the corporation had ceased to exist by non-user of its franchise for five consecutive years. The respondents, in their answer, also denied that the complainant had been holding possession of the property in controversy ; and further answering, alleged that they were the owners of the land in controversy, but admitted that their claim to such ownership rested upon the sales made by the sheriff and the deed executed by him, as described in the bill.

It was shown by the evidence that England & Sons recovered a judgment against the complainant corporation on March 23, 1874, for $2,500 ; that execution was issued on this judgment April 28, 1874, and returned no property found, and that this judgment was kept alive by the repeated issuance of executions, ten years not elapsing between any of the dates of issuance ; that this judgment was assigned to the Aetna Life Insurance Co., and that, on March 31, 1881, the Aetna Life Insurance Co. assigned the same judgment to Thomas Henry, and Wm. H. Gardner, and that on August 16, and 22, 1888, respectively, Lucy R. Gardner, as administratrix, and Mary Henry, as executrix, of their deceased husbands' estates, assigned their respective interests in said judgment to W. H. McIntosh. It was further shown that on August 29, 1888, a *pluries* execution was issued by the clerk of the circuit court, in the name of W. H. McIntosh, assignee, and that under this last execution, the sheriff levied upon the property of the complainant, and sold the same, at which sale said McIntosh became the purchaser.

On March 1, 1875, Walter Burgess recovered a judgment in the circuit court of Mobile county against the complainant for $7,563.33. On May 9, 1876, Walter Burgess assigned this said judgment to W. H. Gardner, and on August 16, 1888, Lucy R. Gardner, as administratrix of the estate of W. H. Gardner, deceased, assigned said judgment to W. H. McIntosh. Execution was issued on this judgment July 13, 1875, but no other execution was issued until Aug. 29, 1888, when the execution was issued in the name of W. H. McIntosh, assignee. Under this last execution, the sheriff levied upon the

[Gardner *et al.* v. Mobile & Northwestern Railroad Co.]

property of the complainant, at the same time he levied under the execution issued upon the England judgment, and at the sale thereunder McIntosh became the purchaser. These judgments were assigned to W. H. McIntosh by Mary Henry and Lucy R. Gardner, under a contract, to be held by said McIntosh, as trustee, pending an option which had been given by them to certain other parties.

The time for the exercise of this option having elapsed, the said Mary Henry and Lucy Gardner, requested McIntosh, as trustee, to re-convey the property to them, which he did by a deed in due form. It is these deeds, and the deed from the sheriff to McIntosh, which the complainant seeks to have cancelled.

Upon the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for, and ordered that the said deeds be vacated and annulled, and the temporary injunction be made perpetual. From this decree the present appeal is prosecuted, and the same is here assigned as error.

OVERALL, BESTOR & GRAY, for Mrs. Gardner.—1. The collateral attack on these executions can not be made in the chancery court. The deed of a sheriff can not be collaterally impeached on account of such irregularities.— *Pollard v. Cocke,* 19 Ala. 188 ; 2 Brick. Dig. 458, § 373.

2. An execution issued on a judgment, even after the time prescribed by statute and when dormant, like one that is issued prematurely, is only irregular and voidable. It is not void. Such an irregularity, although erroneous, when directly assailed by motion to quash or otherwise, can not be attacked collaterally.—*Sandlin v. Anderson,* 76 Ala. 405 ; *Steele v. Tutwiler,* 68 Ala. 107. If a sale of land is impeached because of irregularities merely, the jurisdiction of a court of law to vacate it is exclusive.—3 Brick. Dig. 453, §§ 73, 74.

3. The lands of the complainant, which it held in fee, the railroad having been abandoned for nearly 17 years and all of its iron and cars having been sold and disposed of, is liable to levy and sale under execution.— Code, § 2892 ; *Benedict v. Heineberg,* 43 Ver. 231; *Arthur v. Commercial & Railroad Bank,* 9 Smedes & Marshall (Miss.) 394.

FRED'K G. BROMBERG and McCARRON & LEWIS, for the other appellants.—1. The Alabama statutes, providing for the forfeiture of the franchises of a railroad corporation by non-user, are self-executing and can be raised and considered in this cause.—Code of 1867, § 1741; Code of 1876, § 1858; Code of 1886, §§ 1602, 1676; *In re Brooklyn W. & N. R. Co.*, 72 N. Y. 245; *Ib.* 75 N. Y. 335; *Brooklyn Steam Transit Co. v. Brooklyn*, 78 N. Y. 524.

2. Section 1741 of the Code of 1867 was not repealed by the act approved December 29, 1868.—Acts of 1868, 462–72. There was no repealing clause in this act, by which it expressly repealed the article of the Code of 1867, relating to the organization of corporations for the purpose of building plank roads, railroads, &c., of which section 1741 forms a part. If there was any repeal, it was by implication. Repeals by implication are not favored by the courts.—2 Brick. Dig., 463, § 45; 3 Brick. Dig. 750, § 47. The act of December 29, 1868, amended the Code.

3. The lands taken in fee simple by railroad corporations are held subject to levy.—Wood's Railway Law, 770, note 2. The property levied upon and sold by the sheriff in this cause was subject to levy and sale under execution.—Code, § 2892.

H. AUSTILL and PILLANS, TORREY & HANAW, *contra.*
1. The bill contains equity. It avers that the corporation is in possession of the property and franchises, and such possession is being disturbed and threatened by respondents, who claim under the sheriff's deed. The deed casts a cloud on the title of complainant and the chancery court will take jurisdiction to restrain respondents and remove such cloud.—*Cowan v. Sapp*, 74 Ala. 44; *Strauss v. Meertief*, 64 Ala. 299; *M. & G. R. R. Co. v. Peebles*, 47 Ala. 317; *Ray v. Womble*, 56 Ala. 32; *Lockett v. Hurt*, 57 Ala. 198; *Brevard v. Jones*, 50 Ala. 232; 3 Brick. Dig. 350, §§ 263, 267.

2. While respondents admit that the corporation once existed, they say, for various reasons, it has ceased to exist. The corporation was not dissolved by non-user. 2 Morawetz on Corp., 1011; *Bank v. Bank*, 14 Wall. 383; *Bank v. Ins. Co.*, 104 U. S. 54; 24 Pick. 49; 39 Fed. Rep. 456.

[Gardner *et al.* v. Mobile & Northwestern Railroad Co.]

3. The existence of the company having been admitted, the respondents are precluded from raising these questions as to forfeiture of its charter, in this proceeding. 1 Redfield on Railways, 59, n. 12; Angell & Ames on Corp., §§ 636, 777; 1 Abb. Dig. Corp. 339–340; 2 Morawetz on Corp., 1003–4; *Duke v. Cahawba, Nav. Co.*, 16 Ala. 372; *Davis v. M. & C. R. R. Co.*, 87 Ala. 633, 639; 40 Penn. St. 157; *Ib.* 459; *Hudgins v. State,* 46 Ala. 208; *Importing Co. v. Locke*, 50 Ala. 332; *Selma & T. R. R. Co. v. Tipton*, 5 Ala. 787; *Lehman v. Warner*, 61 Ala. 455.

4. The property and franchises levied on by the sheriff and sold under the execution from the circuit court of Mobile county were not liable to such proceedings, and no title passed.—2 Redfield on Railways, 592; Rorer on Jud. Sales, 901–907; *Buncombe County v. Tommey,* 115 U. S. 122; *E. Ala. R. R. Co. v. Visscher*, 114 U. S. 340; *Eufaula Wat. Co. v. Pipe Co.*, 89 Ala. 554.

5. The Burgess judgment had lapsed and become dormant and presumptively satisfied, and at such distance of time no execution could have issued on it in favor of Burgess himself.—Code of 1886, 2922; *McCall v. Rickarby*, 85 Ala. 152; *Perkins v. Briarfield Co.*, 77 Ala. 403.

6. Complainant had its election in proceeding to vacate these sales, to go either into the law court whose powers were limited, or into this court which could go beyond the law court and vacate the sheriff's deed, and thus more effectually remove the cloud cast on its title. The attack by the bill on the invalid proceedings is direct, not collateral or incidental, and is made not by a stranger to the process, but by the defendant itself.— *Lockett v. Hurt*, 57 Ala. 198; *Ray v. Womble*, 56 Ala. 32; *Leonard v. Brewer*, 86 Ala. 390.

STONE, C. J.—The bill was filed to vacate a sale of lands made by the sheriff of Mobile county, under executions which were issued from the circuit court of that county, founded on judgments rendered against the appellee. It seeks a cancellation of the conveyance made by the sheriff to the purchaser, and of subsequent conveyances dependent on it, and prays an injunction to prevent alleged trespasses on the lands. The validity of the sale by the sheriff is impeached on the ground of al-

leged irregularities in the issue of the executions; the payment of one of the judgments; and because the lands were the right-of-way of the appellee, and, as is asserted, not the subject of levy and sale under executions at law.

Prior to the issue of the executions under which the sales were made, the judgments had been assigned. The assignments were not made in the mode prescribed by the statute; (Code, § 2927) ; and the mandate of the executions was, that the moneys made should be accounted for to the assignee of the judgments. In all other respects the executions corresponded to the judgments. Judgments have the assignable qualities of choses in action, and may be transferred by parol or in writing. If a statutory mode of assignment is provided, it is cumulative, in the absence of express words inhibiting other modes of assignment.—2 Freeman on Judgments, § 422. The assignment, however made, passes an equity which courts will recognize and protect. It entitles the assignee to sue on the judgment or to issue execution thereon in the name of the assignor, and is beyond his control or interference.—2 Brick. Dig. 153, §§ 308–17. The statute to which we have referred does not lessen the assignable quality of judgments, nor limit the mode of assignment. It is cumulative, entitling the assignee, if the assignment is made in the mode provided, to sue on the judgment, or to the issue of execution thereon for his use, in the name of the plaintiff whether living or dead. It in this way dispenses with the necessity of revivor in the event of the death of the plaintiff; and, under the operation of section 2595 of the Code, he may make himself the sole party on the record. The error in the mandate of the executions is, at most, a mere irregularity, incapable of injury to the appellee, and because of such irregularity, a court of equity will not interfere to vacate a sale made by the sheriff.—2 Freeman on Executions, § 310 ; *Ray v. Womble,* 56 Ala. 32 ; *Lockett v. Hurt,* 57 Ala. 198.

One of the judgments, the one, it is asserted, that was paid prior to the issue of execution thereon, seems to have been assigned by the attorney of the plaintiff therein. Without special authority, an attorney at law can not assign a judgment he may have obtained for his client. The authority, or a ratification by the client,

may be inferred from circumstances. The assignment was made many years before the issue of the last execution, and so far as is now shown, its validity has never been questioned by the client. The silent acquiescence for years by the client is evidence that the attorney had authority to make it, or of a subsequent ratification. The contention of payment of this judgment was not ascertained by the chancellor to be true, and we find no reason to doubt the correctness of his conclusion.

The other judgment, rendered in favor of Burgess, prior to the issue of the execution under which the levy and sale were made, had become dormant; more than ten years having elapsed after the test of the last preceding execution. The execution was irregularly issued and was voidable, but it was not void.—1 Freeman on Executions, § 2830 ; *Sandlin v. Anderson*, 76 Ala. 405 ; *Steele v. Tutwiler*, 68 Ala. 107. On a proper application, seasonably made, the court of law would have quashed it.—*McCall v. Rickarby*, 85 Ala. 152. Such an application must have been made with reasonable diligence ; unexplained *laches* would have been fatal to it.—*Bank of Genesee v. Spencer*, 18 N. Y. 150 ; *Cowan v. Sapp*, 74 Ala. 44 ; *Ponder v. Cheeves*, 90 Ala. 117.

More than two years elapsed after the issue of the execution and the levy and sale, before the filing of the present bill. Whether the court of law would, at that day, have entertained an application to vacate the sale, because of the irregularity in the issue of the execution, it is not necessary to consider. Conceding that court would have intervened, the jurisdiction was exclusive. The rule is very general, that a court of equity will not interfere to vacate a sale under legal process, on account of irregularity in the issue of process, or in its execution; but, as is properly said, "the application ought to be made to the court issuing the writ, and if made elsewhere ought not to be entertained." There must be accident, surprise, mistake, or fraud, or some fact or circumstance affecting the sale itself, and not resting on the irregularity of the process, or irregularity in its execution, before a court of equity will take jurisdiction to vacate it. There is not in this case averment or evidence of either of these conditions.—2 Freeman on Executions, § 310 ; *Ray v. Womble*, 56 Ala. 32 ; *Lockett v. Hurt*, 57 Ala. 198 ; *Cowan v. Sapp*, 74 Ala. 44.

The more important question is, whether the lands were the subject of levy and sale under the executions; and this depends, materially, upon the quality of the estate residing in the appellee. The allegation of the original bill is, that they were acquired for a right-of-way, under the charter of the appellee, "by purchase, condemnation and otherwise."

The general law providing for the creation and regulation of railroad corporations, approved December 29, 1868, under which the appellee was incorporated and organized, contains the grant from the State of the franchises and powers it claims to have acquired. It did not confer the power of acquiring lands by proceedings in condemnation, or otherwise than by gift or purchase; and did not limit the estate or interest which could be acquired. The act of March 1, 1871, passed after the creation and organization of the appellee, conferred the power to resort to compulsory proceedings in condemnation for the taking of lands.—Acts, 1870–71, pp. 55–60.

There is no written evidence of the title of the appellee introduced; no other than vague and indefinite parol evidence, which seems to have been received without objection, indicating that parts of the lands were acquired by condemnation, and other parts by gift or purchase, not distinguishing between them. The grant of power to acquire, hold and convey lands for a right-of-way, or other uses, by the law of 1868, is general and extensive. The third section confers power to "acquire and convey at pleasure, all such real and personal estate, as may be necessary and convenient to carry into effect the objects for which it was created;" and the 15th section provides for the acquisition, by purchase or gift, of any lands in the vicinity of the road, or through which it may pass, so far as may be deemed convenient or necessary to secure the right-of-way, or such as may be granted to aid in the construction of the road, and to hold and convey the same in such manner as the board of directors may prescribe. Acts, 1868, pp. 462—466.

It is an incidental power of every corporation, unless restrained by statute, to purchase and alien lands necessary for the exercise of its corporate powers; and this, "independent of positive law" conferring such power. Says Ch. Kent: "All corporations have an absolute *jus disponendi* of lands and chattels, neither limited as to

objects or circumscribed as to quantity."—2 Kent, 281.
And railroad corporations may take a fee in lands al-
though corporate existence is limited to a term of years.
1 Morawetz Corp., § 330; *Davis v. M. & C. R. R. Co.*,
87 Ala. 633; *Nicoll v. N. Y. & E. R. R. Co*, 12 N. Y.
(2 Kernan) 121.

What was the quantity and quality of the estate the
appellee had in the lands? The power to acquire an
estate in fee, by purchase or gift, for a right-of-way, or
for other uses, was very broad and general, and, accord-
ing to the allegations of the bill and the scant evidence
introduced, the lands were acquired, certainly in part,
by the exercise of this power. If an easement only—the
right to construct, maintain and operate a railroad in
and upon them—was acquired, it is not possible to as-
certain the parts subject to the easement, distinguished
from the parts in which a fee was acquired. As the
case is presented, the more probable inference is, that
the appellee had an estate in fee in the lands, and not a
mere easement. If the latter is the nature or character
of its estate or interest, entitling it to hold in exemption
from levy and sale, the fact should have been shown by
certainty of pleading and satisfactory evidence.

As a general rule, the property of all private corpora-
tions is as subject to legal process for the satisfaction of
debt as is the property of natural persons. An exception
obtains, however, when the corporation is created to
serve public purposes charged with public duties, and
is in the exercise of its franchise and in the perform-
ance of its duties, Then, on considerations of public
policy, without regard to the nature or quality of the
estate or interest of the corporation, according to the
weight of authority, such property as is necessary to
enable it to discharge its duties to the public, and effec-
tuate the objects of its incorporation, is not subject to
execution at law. The only remedy of a judgment
creditor is to obtain the appointment of a receiver, and
the sequestration of its income or earnings.—1 Free-
man on Executions, §179, and authorities collected in
notes; 2 Morawetz Corp., § 1125; *Gue v. Tidewater Co.*
24 How. 257; *Overton Bridge Co. v. Means*, 33 Neb. 857;
s. c. 29 Am. St. 514, and authorities cited.

The exemption from levy is maintainable, however,
only upon the theory that the corporation is created for

the furtherance of public purposes, of such importance to the public that there must not be private interference with such of the corporate property as is essential to effectuate these purposes ; and presupposes that to these purposes, the property is being applied. Property not necessary to effectuate these purposes, if acquired by gift or purchase, may be taken by legal process for the satisfaction of debts.—2 Morawetz Corp., §1125. And so may personal property employed, and necessarily employed, in the exercise of corporate franchises.—1 Freeman on Executions, § 179. When the lands were levied and sold, the appellee as a corporation had become inert, and had life in a name only. By non-user it had subjected itself to the penalty of forfeiture by a direct proceeding at instance of the State, while only in the absence of such forfeiture, it could retain the capacity to exist as a corporation. It was an existence in name only. It was not, and had not been for a period of 13 or 14 years, in the exercise of its corporate franchises. The line of railroad had been graded, embankments, bridges and trestles had been erected and constructed on the lands in controversey. The work was incomplete, and, for more than sixteen years prior to the levy and sale, had been abandoned. From the only part of the road which was completed, more than fourteen years before the levy and sale, the rails and cross-ties were removed and sold to a street railway company ; and the locomotive and flat cars, the only rolling stock it seems to have ever possessed, and which had been utilized solely to aid in construction, were sold and carried away. Now, conceding that the property of the appellee, essential to the exercise of its franchises and to effect the public purposes contemplated in its creation, may be exempt from levy and sale under legal process, can the exemption continue after the franchises have been abandoned? Can it exist when the necessity for its existence has terminated? We think it is co-extensive with the performance of the public purposes the corporation was intended to promote, and when these purposes are abandoned the exemption ceases, and the property stands in the condition of property not necessary to enable the corporation to perform its duties to the public.—1 Freeman on Executions, § 179.

In *Benedict v. Heinberger*, 43 Vt. 231, a railroad com-

pany had ceased to use a portion of its road, and was removing the rails necessary to its operation. The company owning in fee the part of the road so abandoned, it was held such part was subject to levy and sale under execution at law. The decision rests upon the proposition, that the land so abandoned was not being held for public uses, or for use as a railroad. In that case, there was an abandonment in fact and intent of the public uses. Here, there was an abandonment in fact. There may have been a lingering hope that, at some indefinite time in the future, the corporation might resume activity, and apply the lands to the uses for which they were acquired. Or that they could be sold to some other company having the means or credit to complete the construction of a line of railroad. However this may be, the fact remains that there was not an exercise of corporate franchises for years, and the lands were not applied to public uses. Practically there was no pretense that they were held to enable the company to discharge its public duties. We are of opinion they were subject to levy and sale under the executions; that the sale was valid passing to the purchaser the fee vested in the appellee. If the lands were not subject to execution, what remedy could the judgment creditors have? There was no income or earnings to be sequestered. The result of the contention would be that the lands were placed beyond the reach of creditors, and yet the appellee held the fee, having power and capacity to sell and convey it, but applying it to no public uses, and earning no income.

The question we have considered, the right to levy an execution at law, on lands owned and held in fee, as the right-of-way of a railroad corporation, the corporation having become inert and having ceased all user of its franchises and all performance of its public duties, was not considered in *East Ala. Railway Co. v. Visscher*, 114 U. S. 340. All that was considered and decided in that case was, whether the mere right-of-way of a railroad company, "a mere easement in the land, to enable it to discharge its functions of making and maintaining a public highway, the fee of the soil remaining in the grantor," was the subject of levy and sale under execution at law. The court expressly declared that it was "not necessary to discuss the general question as to the right to levy an execution at law on prop-

erty owned by a railroad company in fee.'' Nor is it now necessary to express an opinion whether under any circumstances, the easement of a railroad company may or may not be the subject of levy and sale under execution at law.

The assignments of error are numerous, presenting many questions which have been discussed by the respective counsel. The conclusion we have reached renders it unnecessary to consider them in detail. The result is, the decree of the chancellor must be reversed, the injunction dissolved, and the bill dismissed at the cost of the appellee in this court and in the court of chancery.

Reversed and rendered.