### ORMAN v. NORTH ALABAMA ASSETS CO.

(District Court, N. D. Alabama, S. D. March 17, 1913.)

#### No. 206.

1. TRUSTS (§ 103*)—CONSTRUCTIVE TRUST—ATTORNEY AND CLIENT—CONVEYANCE.

Where attorneys having a claim for fees against complainant settled an attachment on certain other land of the defendant in the litigation by receiving a conveyance to themselves of a half interest in the land for the sole purpose of securing their fees, which had subsequently been paid, they would be decreed to hold their interest in trust for complainant, under the rule that equity, looking to the substance rather than the form of the transaction, will effectuate the intention of the parties by declaring the nominal parties to hold in trust for the person entitled to the beneficial interest.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 154; Dec. Dig. § 103.*]

2. COMPROMISE AND SETTLEMENT (§ 12*)—EFFECT—PAYMENT OF JUDGMENT.

Where, after complainant had obtained a personal judgment against a corporation on certain purchase-money notes secured by a mortgage afterwards foreclosed, other real property not covered by the mortgage was attached, and pending the litigation a settlement was arrived at to obtain a release of the attachment, which settlement agreement referred exclusively to the attached property and contained no stipulation that the principal judgment against the corporation should also be satisfied, such stipulation and a transfer thereunder of one-half of the attached property to complainant's attorneys for the benefit of themselves and of complainant did not satisfy the original judgment.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 54–74; Dec. Dig. § 12.*]

3. MORTGAGES (§ 417*)—ASSIGNMENT—TRANSFER OF DEBT—NECESSITY.

Assignment of a mortgage without a transfer of the debt is a nullity, and vests in the assignee no right to foreclose.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1227–1236; Dec. Dig. § 417.*]

4. MORTGAGES (§ 270*)—ASSIGNMENT—VALIDITY—TRANSFER OF DEBT.

Complainant, having secured a judgment against the corporation on certain purchase-money notes secured by a mortgage, transferred the mortgage, without a formal transfer of the debt, to his attorneys in 1893 or 1894 to secure their fees. Other property having been attached, the attorneys settled the attachment proceedings by taking a conveyance of a half interest in the attached property in their own names, but intending the same to be merely as security. In 1894 complainant made a general assignment for the benefit of his creditors, who sold complainant's interest to A. in 1900, who thereafter retransferred it to complainant in May, 1911. Held, that, in the absence of proof that the transfer of the mortgage to the attorneys was subsequent to complainant's general assignment, there was no showing of an outstanding title at the time the

mortgage was foreclosed by the assignees, and there being no necessity for a written transfer of the debt secured by the mortgage it would be presumed that the attorneys had full title to the debt and mortgage at the time of the foreclosure, and that the same was therefore valid.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 608, 609; Dec. Dig. § 270.*]

In Equity. Bill by W. A. Orman against the North Alabama Assets Company. Decree for complainant on his original bill and dismissing defendant's cross-bill, with costs.

Percy, Benners & Burr, of Birmingham, Ala., and Williams & Jones, of Russellville, Ala., for complainant.

A. Latady, of Birmingham, Ala., for defendant.

GRUBB, District Judge. This is a suit filed by the plaintiff to compel the defendant, the North Alabama Assets Company, to convey to it the legal title to an undivided one-half interest in certain real estate described therein, upon the idea that the defendant mentioned holds the legal title to said undivided interest in trust for the plaintiff. The right of the plaintiff to compel the conveyance to it depends upon the interpretation of a contract that was entered into between the plaintiff's attorneys and the said defendant, by the terms of which a division of the land involved was provided for between the plaintiff's attorneys and the said defendant. The sole defendants originally were the Assets Company and the administratrix of one of said attorneys, but, by subsequent amendment, the legal representatives of two of the attorneys, who were dead (the third having quitclaimed his interest in the land to plaintiff before the suit was filed), were made parties defendant to the bill. The attitude of the defendant, the Assets Company, as to the relief prayed for in the original bill as disclosed in its answer was that of a stakeholder as to the title to the half interest involved, disclaiming ownership in itself and expressing its willingness to convey the legal title to the half interest to the rightful owner, when determined by decree of the court, and when it was protected in so doing by the court's decree. The defendant, the Assets Company, also filed a cross-bill, asserting that the plaintiff was accountable to it for the value of certain property, other than that described in the bill, to which it alleged it had title, unless because of the foreclosure of a mortgage on it by the plaintiff and one Milton Humes, which foreclosure was alleged to be void, (1) because the debt secured by it was fully satisfied at and before the time of the foreclosure, and (2) because the parties to the foreclosure did not own the debt, if still outstanding, when the mortgage secured by it was foreclosed. The cross-bill averred that the plaintiff had subsequently purchased a part of the lands sold under foreclosure, with notice of the invalidity of the foreclosure sale, and had thus become a trustee in invitum as to them, and, having thereafter sold them to an innocent purchaser, should be held accountable to the defendant, the Assets Company, for their value or the proceeds of the sale. The Assets Company, defendant in the original bill and plaintiff in the cross-bill, prayed for an accounting against the plaintiff in the original bill, who was made a defendant to the cross-bill, and that no decree should be rendered directing it to convey the half

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

interest in the land involved in the original bill to plaintiff in that bill until such accounting was had, and until the plaintiff in the original bill had satisfied such decree as might be entered against it as a result of the accounting under the cross-bill. These are briefly the issues presented by the pleadings.

The first question is whether the plaintiff is entitled to the relief prayed for by him in the original bill, independently of the issue presented by the cross-bill; and this depends upon whether he is shown to be the equitable owner of the half interest in the lands described in the bill. These lands were originally the property of the North Alabama Development Company, and both parties derive title from that company. The plaintiff, Orman, had sold the Development Company other lands, taking its notes, secured by purchase-money mortgage, for the deferred payments. When the Development Company became embarrassed and defaulted in paying these notes, Orman sued the Development Company on the notes, and attached lands other than those covered by the mortgage. Judgment was rendered in Orman's favor on the notes, and much litigation ensued with reference to the validity of the attachment levied on the property, an undivided one-half interest in which is involved in this suit. Finally this litigation was settled by an agreement, made between the firm of Almon & Bullock and Milton H. Humes, who were the attorneys for Orman in the litigation, and the North Alabama Assets Company, which had succeeded to the rights of the judgment debtor in the attached property, and which was executed June 29, 1896. A supplemental agreement was executed by the same parties in July, 1896. At the time of the execution of these agreements, the plaintiff, Orman, was indebted to his lawyers, who were the parties of the first part in said agreement, for legal services in relation to the litigation involved in the settlement in the sum of $4,000. The attorneys had no other interest in the subject-matter of the agreement or the property involved than as attorneys and for their fees. While the contract does not purport to have been made by them as trustees for Orman, but in their own name and right and without mention of Orman, viewed in the light of the situation of the parties, it is clear that the contract was made in the name of the attorneys to protect them in the collection of their fees, and beyond that for the interest of their client, who alone had any interest to be subserved by it in the premises or the litigation.

[1] A court of equity, looking to the substance rather than the form of the transaction, will effectuate the intention of the parties by declaring the nominal parties to hold in trust for themselves to secure the payment of their fee, and then for their client, the plaintiff. The record shows conclusively that the fees of the attorneys, who were parties to the contract, were paid in full prior to the institution of the suit. The legal representatives of all the attorneys, except one, are before the court, and it is shown that the excepted one had executed to Orman a quitclaim for his interest before the suit was filed. A decree directing the defendant, the Assets Company, to convey the one-half interest, which it admits it held in trust, to the plaintiff, would not only accomplish the equities of the case, but would fully protect the Assets Company in the execution of the trust. Such a decree

should be entered, unless because of the relief asked by the Assets Company in its cross-bill.

The Assets Company claims the right to retain the trust property until such time as the plaintiff shall have accounted to it for what may be found due because of a trust which the Assets Company asks be declared in the proceeds of the sale of other property of its predecessor, the Development Company, purchased by Orman from the subpurchaser at a foreclosure sale under a mortgage given by the Development Company, a foreclosure which the Assets Company alleges was void, because at the time of its occurrence the debt secured had been fully satisfied, and because, if not satisfied, it was the property of another than the persons who foreclosed the mortgage under the power of sale. The allegation is that when Orman purchased he did so with notice of the invalidity of the foreclosure for the reasons mentioned and became a trustee in invitum, and, having resold the property purchased to an innocent purchaser into whose hands the Assets Company cannot follow the property, it has the right to look to the proceeds of the sale in the hands of Orman, and to hold the interest in the trust property until Orman has accounted to it under the claimed collateral trust.

[2] The first question presented as to the invalidity of the foreclosure sale is whether the secured debt was fully satisfied when the foreclosure occurred. If so, the foreclosure was void. The contention of the Assets Company in this respect is based on the contract of settlement between the attorneys of Orman and the Assets Company, of June 29, 1896. The exact question is whether the effect of that agreement was to satisfy the personal judgment which Orman had obtained against the Development Company on the purchase-money notes secured by the mortgage afterwards foreclosed, or merely to settle the rights of the respective parties, then interested in the property attached in the suit filed by Orman in which the judgment was rendered, without affecting the liability of the Development Company upon the principal judgment. Which of these views is the correct one is to be determined by the mutual intention of the parties, derived from their situation and relationship when it was entered into, and from the language of the agreement.

No appeal was ever taken from the principal judgment against the Development Company, and litigation subsequent to its rendition related altogether to the validity of the attachment levied upon the property which was the subject-matter of the agreement. The Assets Company had, after the judgment was rendered, acquired the interest of the Development Company in the attached property, but did not become personally liable on the judgment obtained against it. The title to the property covered by the attachment was not marketable, so long as the litigation relating to the attachment was pending and undetermined. It was in this attitude of the parties, with relation to the litigation and the property affected by it, that they entered into the negotiations which resulted in the agreement. It seems quite clear from the situation of the parties, as described, that the Assets Company was interested in the release of the attached property, but not in the satisfaction of the personal judgment against the Development

Company. The purpose of the parties was to make property, which had long been tied up in litigation still undetermined, available. The natural method of accomplishing the purpose was by a division of the property. There was no occasion for an agreement to satisfy the principal judgment. The pending litigation did not affect it. The Assets Company had no concern in having it satisfied. Orman, after agreeing to divide the property affected by the attachment by accepting a half interest in satisfaction of the writ of attachment, would be estopped from thereafter levying upon the Assets Company's half interest therein under subsequent process issued upon the judgment. The spirit of the agreement of division was that the Assets Company's half interest should be no longer subject to the judgment, in consideration of its conveyance to Orman of the other half interest.

The language of the agreement supports this view. It recites that the parties to it laid claim to certain property, described specifically therein and covered by the attachment, and that certain other suits were pending relating to the property, and upon injunction bonds, and that all parties were "desirous of settling all said litigation *regarding. said property*." It provides for the dismissal of "all of said suits," and then specifically mentions injunction suits and a pending foreclosure suit. No mention is made specifically of the suit in which the attachment was issued. It provides that "all property involved" in the attachment suit is to be divided between the parties in equal parts and for a method of effecting the division. There is no stipulation that the principal judgment against the Development Company was to be satisfied. Dismissal of a suit is not appropriate language with reference to the satisfaction of a judgment, though it might be as to a writ of attachment issued in the cause in which the judgment was rendered. The agreement relates to the disposition of attached property, and not to the satisfaction of the judgment rendered in the suit in which the attachment was issued. As I construe the agreement of June 29, 1896, it does not have the effect of satisfying the judgment obtained by Orman against the Development Company or the purchase-money notes, secured by the mortgage which was foreclosed by Orman and Humes, and which were merged in the judgment.

[**3, 4**] The remaining question is whether the foreclosure was void by reason of the fact that Orman and Humes, when they foreclosed the mortgage, were not the owners of the debt thereby secured, but assignees of the mortgage alone. The assignment of the mortgage without the transfer of the debt would be a nullity, and would vest no right or title to foreclose in the assignee. Carpenter v. Longan, 16 Wall. 274, 21 L. Ed. 313. The evidence shows that Orman transferred the mortgage by indorsement to Humes in 1893 or 1894. It also shows that there was no written assignment of the judgment which had been obtained on the notes secured by the mortgage on October 31, 1892. The assignment of the debt, even when it is evidenced by a judgment, is not required to be in writing. In the case of Buckheit v. Decatur Land Co., 140 Ala. 216, 37 South. 75, the Supreme Court said:

"The transfer of a mortgage debt, whether by writing or parol, is in equity an assignment of the mortgage."

In the case of Gardner v. Mobile & N. W. R. R. Co., 102 Ala. 635, 642, 15 South. 271, 272 (48 Am. St. Rep. 84), the Supreme Court of Alabama said:

"Judgments have the assignable qualities of choses in action, and may be transferred by parol or in writing. If a statutory mode of assignment is provided, it is cumulative, in the absence of express words inhibiting other modes of assignment. The assignment, however, passes an equity which courts will recognize and protect. It entitles the assignee to sue on the judgment or to issue execution thereon in the name of the assignor, and is beyond his control or interference." Lowery v. Peterson, 75 Ala. 109; Wells v. Cody, 112 Ala. 278, 20 South. 381.

The purpose of the assignment of the mortgage by Orman to Humes was to secure the fee of Humes and associates in the litigation instituted by Humes and others to collect the debt secured by it. The subsequent agreement of June 29, 1896, between these attorneys of Orman and the Assets Company and its recognition by Orman is sufficiently persuasive that Humes and his associates were considered by Orman to have an interest in the judgment at that time, though no written transfer of it is shown to have been executed. The agreement of June 29, 1896, related to the litigation in which the judgment was rendered, and was made in the name of the attorneys for the purpose of securing their fees in that litigation, the same purpose for which the mortgage was assigned to Humes. The natural inference is that Orman transferred to his attorneys, as security for their fees, his interest in the debt they were collecting for him, and in the judgment in which it became merged, and the mortgage securing the debt along with it. No other hypothesis reasonably explains why the contract, which settled the rights of the interested parties with respect to the attached property, should have been made in the name of Humes and Almon & Bullock, instead of in the name of the plaintiff in attachment. If Humes and Almon & Bullock were transferees of the judgment debt, though by parol only, they were entitled to become transferees of the mortgage also which secured it, and the assignment of the mortgage to Humes as trustees would not then be a nullity, but would authorize its foreclosure by Humes. If the form of the assignment was insufficient to pass the legal title to the land to Humes as trustee, the defect is remedied by the joinder of Orman in the foreclosure sale and deed.

In May, 1894, Orman made a general assignment for the benefit of his creditors to Hurst, and the assignment carried with it his then interest in the judgment. Hurst retained what interest Orman had in the judgment till, as assignee, he sold it to George C. Almon in 1900, who transferred it to Orman in May, 1911. The transfer of the mortgage by Orman to Humes is shown to have occurred in 1893 or 1894, and is not shown to have occurred subsequently to the assignment. The burden was on the cross-plaintiff to establish the priority of the date of the general assignment, in order to show an outstanding title at the date of the foreclosure. It is fair to presume that the assignment of the debt accompanied the assignment of the mortgage, since they were intended to accomplish the same purpose, i. e., the securing of the fees of the attorneys, and since the assignment of the mortgage was a useless thing not so accompanied, and since it also appears that

an interest in the judgment was assigned to Humes and his associates prior to June 29, 1896, the date of the settlement agreement between Humes and his associates and the Assets Company. The assignment carried to the assignee the interest of Orman in the judgment, but subject to the interest in it which had been previously assigned to Humes, and left in Humes, at the time of the foreclosure, an interest in the judgment debt which was also secured by the mortgage, which entitled Humes to foreclose the mortgage.

The foreclosure sale having been determined to be valid, it is not necessary to determine whether, if defective, its validity could be assailed collaterally, and is an answer to the relief asked by the plaintiff, viz., the execution by defendant of an admitted trust involving other and different property.

A decree will be entered, granting the relief prayed for in the original bill and dismissing the cross-bill, and taxing the defendant in the original bill and the plaintiff in the cross-bill with the costs of the suit.