## SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *v.* TALBOT.

1. A carrier acquires no right, by virtue of its employment as such, to hold goods delivered to it by a wrong-doer to whom they do not belong, until the charges are paid, against the claim of the true owner; nor has the carrier any lien on the goods for the transportation charges.
2. The Supreme Court will not pass on a question not made in the trial court. Thus, where the sole prayer of the petition is for injunction, and the defendant, without demurring, pleads to the merits and consents to a trial on the merits by the judge without a jury, he can not, after an adverse judgment,

for the first time raise the point in a direct bill of exceptions that the plaintiff has not pursued his proper remedy.

Argued May 23, — Decided June 16, 1905.

Equitable petition. Before Judge Mitchell. Lowndes superior court. November 22, 1904.

This case arose upon a petition brought by T. M. Talbot against the Savannah, Florida and Western Railway Company, to enjoin it from selling a certain mare under a claim of lien, as provided by the Civil Code, §§ 2303, 2304, for freight charges. The petition alleged, that the plaintiff is the owner of a certain dark bay mare of the value of $300, which is held by the defendant; that the defendant is seeking to wrongfully sell the mare under the named sections of the code, under a claim of lien for the sum of $74, freight charges; that said mare was wrongfully received by the defendant; that it was shipped by the plaintiff's direction from Rochester, N. Y., to his brother, H. Talbot, at Columbus, Ohio, under bill of lading, a copy of which is attached to the petition; that the mare arrived at Columbus, Ohio, in due or reasonable time; that without plaintiff's knowledge or consent, and without the knowledge or consent of the consignee, the mare was transported in some way from Columbus and got into the possession of the defendant, without the knowledge, authority, or consent of the plaintiff, the consignee, or any authorized agent of the plaintiff; that the transportation was entirely voluntary, and the defendant had no right to charge freight for such transportation; and had no lien on the mare for such charges; and that the defendant refuses to deliver the mare to petitioner or to refrain from selling the same under its alleged claim of lien. The prayer was for an injunction to restrain the sale, and to prevent the enforcement of the lien for freight charges. The defendant, in its answer, admitted the possession of the mare and that it was seeking to sell it under the Civil Code, §§ 2303, 2304, for the payment of its lien for freight charges in the sum of $74.90. It averred, that it received the mare in the usual and ordinary business way from the Louisville and Nashville Railroad Company at Montgomery, Alabama, and transported it from Montgomery to Valdosta, Georgia, in good faith; that defendant's possession of the mare is a legal possession, because it was received in the ordinary and usual course of business and brought by the defendant to the

place of destination in good faith; that after reaching the destination the mare could not be delivered, and therefore the defendant is holding the same for its freight charges; that the mare was shipped from Cincinnati (?), Ohio, to Valdosta, Georgia, and a bill of lading was issued at Columbus, Ohio, to H. Talbot, and the mare was shipped to Valdosta by said H. Talbot; that defendant and its connecting lines transported the same according to the shipping contract; that when the mare reached Valdosta the consignee refused to accept the same and to pay the freight charges. The case came on to be tried on its merits before the judge of the superior court, without a jury, upon an agreed statement of facts and certain evidence which was introduced. It was agreed by the parties that on June 30, 1901, W. E. Foster delivered the mare to the New York Central and Hudson River Railroad Company, at Rochester, New York, to be transported to Columbus, Ohio, said railroad company accepting and delivering its bill of lading, the material parts of which are as follows:

"New York Central & Hudson River R. R. Co. Received, subject to the classification in effect on the date of issue of this bill of lading, at Rochester Station, July 30, 1901, from W. E. Foster, the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below, which said company agrees to carry to said destination, if on its road; otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, in consideration of the rate of freight hereinafter named, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (see conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns as just and reasonable.

Marks: Consignee, H. Talbot. Destination, Columbus. Ohio.

Description of articles: 1 horse, ORR val. $100, man in chg., Car D 22867. A. R. Laurence, Agent. (The signature of the Agent here acknowledges only the receipt of the property and the charges advanced, if any.)"

[On the other side.] " Not negotiable. If the word 'order' is written immediately before or after the name of the party to whose order the property is consigned, the surrender of the bill of lading, properly endorsed, shall be required before the delivery of the property at destination, as provided by Section 9 of the conditions of the Uniform Bill of Lading, on the back hereof." Among the conditions placed on the back of said bill of lading, which is headed, " New York Central & Hudson River R. R. Co. Uniform Bill of Lading Conditions," is the following: " Property not removed by the person or party entitled to receive it, within twenty-four hours after its arrival at destination, may be kept in the car, depot, or place of delivery of the carrier at the sole risk of the owner of said property, or may be at the option of the carrier removed and otherwise stored at the owner's risk and cost, and there held subject to lien for all freight and other charges.

. . If the word 'order' is written hereon immediately before or after the name of the party to whose order the property is consigned (without any condition or limitation other than the name of the party to be notified on the arrival of the property), the surrender of this bill of lading properly endorsed shall be required before the delivery of the property at destination. If any other than the aforesaid form of consignment is used herein, the said property may, at the option of the carrier, be delivered without requiring the production or surrender of this bill of lading. . . Owner or consignee shall pay freight at the rate herein stated and all other charges accruing on said property before delivery and according to weights as ascertained by any carrier hereunder."

It was further admitted, that the mare was transported under this bill of lading to Columbus, Ohio, but was not delivered to H. Talbot, the consignee, who lived there, but came on to Valdosta without his knowledge or consent, and that it is now at Valdosta, and is claimed by and is the property of the plaintiff. It was further agreed, that the defendant received the mare from the Louisville and Nashville Railroad Company at Montgomery, Alabama, in good faith and in the usual course of business; that the amount of advanced charges mentioned in the way-bill was paid by the defendant to its connecting lines; that the charge of $15.32 by the defendant is a reasonable charge for the transpor-

tation of the mare from Montgomery to Valdosta; and that the material parts of the way-bill are as follows: "Plant System of Railways. Collect way-bill. Way-bill series and No. LP 497, date, Aug. 5, 1901, LS & MS Car 22867. From Montgomery to Valdosta, Ga., via Alb. Consignor, L&N, Cinti. 258 8/2, 1901. Columbus, O., CCC&St.L. Consignee, H. Talbot, Valdosta. Articles, 1 Horse, Released. Weight, 2000, Class 2, Advanced charges, $59.62, Freight $15.32, Collect $74.94." It was further agreed, that Leonard Johnson was the "man in charge" mentioned in the bill of lading; that he had the bill of lading in his possession and surrendered the same to the initial carrier at Columbus, Ohio, and directed that the mare be shipped to Valdosta; and that it was shipped under this direction. The plaintiff also introduced the following oral testimony. T. M. Talbot: "I know Leonard Johnson; on August 30, 1901, he was a half-grown negro boy, uncouth, fifteen or sixteen years old, such as we have around here on the streets; he did not have any business with the horse; he was put in charge of the horse, looking after it in the car and taking care of it. His duties were to feed and water the horse." On cross-examination he testified, that Leonard Johnson was in Rochester, New York, when the mare was shipped to Columbus, Ohio; that he did not know that Johnson was there; did not know whether he was dressed in broadcloth at the time he was put in charge of the mare; he had not seen him for three and a half months prior to that time and did not know what Johnson's duties were in reference to the mare, except what somebody else told him; he did not know what instructions or restrictions as to the management or control of the mare were placed upon Johnson by the person who put him in charge; neither did he know about what information was given to the Hudson River Railroad Company as to the boy's relation to the mare or as to the right or authority he had over it. The defendant introduced J. F. Passmore, who testified, that he knew Leonard Johnson; that he was at that time from twenty to twenty-five years old, and that in 1901 he looked like he would weigh 130 or 135 pounds, and that mentally he was a bright "fellow;" that he weighs now about 165 pounds; that he is a follower of race horses; that he did not know his business, but had seen him about the stables at the fair grounds; he would

lead the horses around, cooling them off after they had run their races; that he did not know that Johnson was exercising authority or ownership over any of the horses when he saw him thus engaged. Upon the agreed facts and the evidence introduced, the court rendered a judgment in favor of the plaintiff, granting a perpetual injunction against the defendant; to which judgment the defendant excepts, alleging that the judgment is contrary to law and without evidence to support it, for the reasons, (1) that the agreed statement of facts and the evidence submitted showed that the defendant, as a common carrier of freight, for hire, received the mare in good faith from its connecting road and while the mare was in the custody of Leonard Johnson, who had been placed in charge of the same by the consignor; (2) that the agreed statement of facts and the evidence showed that the plaintiff had a complete and adequate remedy at law by an action of trover against the defendant; (3) that the agreed statement of facts and the evidence showed that the defendant had neither done nor threatened to do any act which was illegal, nor was it guilty of any conduct which would authorize the granting of an injunction, but, on the contrary, it was only proceeding lawfully to collect freight charges which were due and which had been advanced to its connecting lines of carriers, and a proper freight charge which was due to the defendant as a common carrier for transporting the freight which it had received in good faith.

*Kay, Bennet & Conyers* and *Cranford & Walker*, for plaintiff in error. *W. H. Griffin* and *A. T. Woodward*, contra.

EVANS, J. (After stating the facts.) 1. The right of the railroad company to collect its transportation charges is dependent upon whether the person who started the shipment of the mare from Columbus to Valdosta had authority to direct such shipment. It is contended that Leonard Johnson, who was in charge of the mare when it left Rochester, New York, was clothed by the consignor with apparent authority to direct this shipment from Columbus to Valdosta. The bill of lading which the New York Central and Hudson River Railroad Company issued to Foster stated that there was a man in charge of the "horse."

This man was Leonard Johnson, and it is inferable from the evidence and the agreed statement of facts that he had no authority over the mare except to feed, water, and look after its general welfare while in transit. It is true that he had possession of the bill of lading, but that bill of lading authorized a delivery to the consignee without its production. It was the duty of the carrier to deliver the mare to the consignee, and it was liable for a delivery to any other person than the consignee named in the bill of lading or his authorized agent. When the mare arrived at Columbus it was not delivered to the consignee, Talbot, but, without his knowledge or authority or consent, was reshipped over the line of defendant's road and its connecting carriers. The delivery to Johnson at Columbus was wrongful, and Johnson's possession was that of a wrong-doer. He had no authority either to receive the mare or to continue the shipment from Columbus to Valdosta. His surrendering the bill of lading in his possession to the initial carrier at Columbus and directing that the mare be shipped to Valdosta was without the knowledge or consent of either the consignee or the owner. A carrier acquires no right, by virtue of its employment as such, to hold the goods delivered to it by a wrong-doer to whom they do not belong, until the charges are paid, against the claim of the true owner; and therefore it has no lien upon them, but must, on demand, surrender them to the owner. Hutch. Car. § 491. This rule is based upon that universal principle that no one's property can be taken from him without his consent, expressed or implied. It is not a harsh rule as applied to common carriers, for the reason that the carrier has the right to demand of the consignor the transportation charges in advance. When a carrier receives goods for shipment from one who has neither title nor rightful possession, the true owner may reclaim his goods wherever found. The right of a connecting road is no better than that of the initial carrier, in the collection of its freight charges, even though it may have received the goods in good faith and without notice that the consignor's possession was wrongful and fraudulent. The liability in such case is on the principle that the true owner of personal property has the right to the possession of his property which has been fraudulently taken from him, even though it be found in the possession of an innocent purchaser. And in

such cases the true owner is not liable for any expenses to which the person in possession may have been put, either in the purchase of the property or otherwise. The evidence in this case authorized the finding that the possession of Johnson, who started the shipment from Columbus to Valdosta, was tortious, and that the shipment was made without authority from either the consignee in Columbus, or the plaintiff, who resided in Valdosta. It follows, therefore, that the defendant is not entitled to its freight charges, however reasonable they may be, and that it has no lien therefor. It was not error for the court to permanently enjoin the collection of the charges by sale under the provisions of the code.

2. The plaintiff in error further contends that the judgment of the court is erroneous, for the reason that the evidence disclosed that the plaintiff had an adequate and complete remedy at law by an action of trover. If the defendant desired to avail itself of the objection that the owner had gone into a court of equity and invoked the aid of that court, when his remedy at law was complete, it should have done so by appropriate demurrer. It can not submit the determination of the case to a court of equity, and, after an adverse judgment, for the first time raise the point that the plaintiff has not pursued the proper remedy. The only prayer in the petition was for injunction. The only issue submitted to the court by the pleadings was whether, under the facts, the plaintiff was entitled to relief by injunction. The failure of the railroad company to demur at the proper time, and the trial of the case by the judge without a jury, amounted to a consent that the issue made by the pleadings should be determined in that manner; and it is now too late, after the case has been decided, to raise the question that the plaintiff's legal remedy was ample, and that there was therefore no necessity to invoke the extraordinary powers of a court of equity. See *Hay* v. *Collins*, 118 *Ga.* 247-8.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*