## GEORGIA RAILROAD AND BANKING CO. *v.* HAAS.

1. If a contract provides for a forfeiture upon a certain default for thirty days after a specified notice, and is enforceable, in order for a forfeiture to take place it must appear that the notice was given in compliance with the contract both as to time and contents, and that the default therein specified occurred.

2. The evidence in this case did not show such facts.

3. There was no evidence of abandonment or intention to abandon the rails which were the subject-matter of the suit, by the transferee under a purchaser at foreclosure sale against the railroad company, so as to vest title to them, by virtue of the doctrine of abandonment of trade fixtures, in the person from whom the right of way was obtained. Nor, under the law, independently of the forfeiture provided for in the contract, could

the landowners from whom the right of way was obtained successfully claim the rails and fastenings laid solely for the purpose of operating the road as being fixtures forming part of the land itself and not removable therefrom.

4. If a person not the owner of property or entitled to its possession takes it and delivers it to a railroad for shipment, the true owner, who is no party to the contract, may, before delivery by the carrier, demand and reclaim his property; and as against an action of trover brought for that purpose against the carrier by the true owner, it furnishes no defense that the carrier refused to recognize his title or right and carried and delivered the property in accordance with the shipment.

5. A corporation charged with a duty to the public can not, by sale or otherwise, dispose of its property or franchises so as to relieve itself from liability for acts done or omitted, without legislative sanction expressly exempting it from liability.

6. If a lessee of the property and franchises of a railroad company, in the operation of its cars and the exercise of its franchise as a common carrier, commits a conversion of property, the lessor may be held liable therefor, in the absence of legislative provision to the contrary.

7. Proper pleading where it is sought to hold a lessor railroad company liable for the acts of its lessee, discussed.

8. The lease made by the Georgia Railroad & Banking Company of its railroad and franchises as a common carrier to W. M. Wadley, and held by assignees under him, furnishes no exception to the general rule of liability above stated; and does not release the lessor from liability for the acts of the lessees in the operation of the road.

Argued May 29,—Decided December 20, 1906.

Trover. Before Judge Reid. City court of Atlanta. December 14, 1905.

For the purpose of aiding in the construction of a contemplated suburban electric railway, certain landowners made donations of land and gave rights of way. The company entered into a written agreement with some of them, which contained the following among other provisions: "It is further agreed and understood between the parties to this contract, that in case said railroad company fails and refuses to comply with its part of this contract in operating said railroad after the same is built, and continues to fail and refuse to comply with the same after having been given thirty days notice by said Southern Land & Loan Co., or by Mrs. Leila L. Sisson or L. M. Cassels as far as the frontage of the abutting property of said Sisson & Cassels is concerned, they having contributed to the furnishing of the street or way and the donation hereinbefore mentioned, in writing, directing it to comply with said contract, then the part of said Electric Company and other improvements built upon the

route furnished by said Southern Land & Loan Co., or along the present frontage of the property of said Sisson or said Cassels on said line, shall be forfeited to said Southern Land & Loan Co., where it owns the entire frontage along said route, or to said company and said Sisson or to said company and said Cassels, respectively, where such parties have contributed to the furnishing of said route as aforesaid, in proportion to their frontage along the route of said car line, or to such person as it or they, jointly or severally, may designate, and it or its agents, or they and their assigns, shall have the right to take charge of same and operate it, sell or do whatever they may choose to do with the same." This was not recorded. Other landowners had with this company verbal agreements of a similar character. The main line of the road and an extension or branch were each covered by a mortgage, and upon foreclosure were sold separately. The purchaser of the extension or branch conveyed it to the present plaintiff. The extension was built passing under the Georgia Railroad, and a temporary culvert constructed, with an agreement that a permanent structure should be erected, which was not done. The court ordering the sale placed upon the purchaser at foreclosure sale the duty of building the permanent culvert; but he declined to do so on account of the expense. Thereupon the Georgia Railroad and Banking Company filled up the opening with dirt, and the cars could not pass under its track. The purchaser determined to remove the track, but was stopped by temporary restraining orders at the instance of property owners along the extension. The suits have never been disposed of. The same property owners, except one, then took up the rails along and through their lands, sold them to a third party and intended to ship them away. For this purpose the rails were loaded on cars of the defendant and were consigned to the shippers' order, deliverable at a distant point. Neither the railroad company nor its lessees knew of the injunction proceedings, nor anything as to the title to the rails or whence they came, but accepted them in the ordinary course of business. The Georgia Railroad and Banking Company had leased out its line, and by assignment two companies became the lessees and are operating the road under the name of the Georgia Railroad Company. The rails being loaded on the defendant's cars and standing on its tracks, the plaintiff, who held by conveyance under the purchaser at foreclosure sale, served the local agent of

the lessees with a written demand therefor, directed to defendant, which being refused, the plaintiff brought an action in trover. A money verdict was rendered for the plaintiff. A motion for a new trial was made and overruled, and the defendant excepted.

*Alexander & Powers, Sanders McDaniel,* for plaintiff in error.

*Westmoreland Brothers,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1-3. It does not appear from the agreed statement of facts in the record that the landowners gave the thirty days written notice provided by the contract as a condition precedent to exercising the right to take charge of the branch road on default of compliance by the railroad company. They did obtain a restraining order to prevent the purchaser or his transferee from tearing up the rails; and then proceeded themselves to do the tearing up while the case was pending. Where a forfeiture is dependent upon the giving of a certain written notice, if it be such as can be enforced, it must appear that the notice was given in compliance with the contract both as to time and contents, and that the default occurred. Considered from the standpoint of a condition subsequent by contract, there was no forfeiture. Moreover, the condition was not in the deeds, but as to some of the grantors apparently in a separate paper unrecorded, of which the mortgagee and purchaser are not shown to have had notice; and as to others it rested merely in parol. The railroad company, not the landowners, was in possession of the right of way, and its possession gave no notice of any such condition or agreement.

If there was no forfeiture by virtue of the contract, was there a forfeiture by abandonment? In *Carr* v. *Georgia R.,* 74 *Ga.* 73, the deed contained an agreement for a reversion on the termination of a particular use. In *Wright* v. *DuBignon,* 114 *Ga.* 765, a tenant sought to remove a servant's room, metallic gutters, and water-pipes laid under the ground. In *Richards* v. *Gilbert,* 116 *Ga.* 382, counters, tables, etc., were held not to be covered by a mortgage of realty, it being agreed that they should not be so. The distinction between these cases and the one at bar is easily seen. In *Charleston Ry. Co.* v. *Hughes,* 105 *Ga.* 1, where a life-tenant had made a conveyance of land to a railroad company, and rails and ties forming a part of its line of railroad had been placed on such land, upon the death of the life-tenant it was held that the remainderman could not, in an

equitable proceeding, eject the company and claim the rails, ties, etc.; but the railroad company could remove them, or pay for the land, not including them. In the case now before us there is no evidence of any intention on the part of the purchaser to abandon to the landowners the rails and fastenings, and the doctrine of the abandonment of trade fixtures 'has no application. There may have been an intention to take up the rails and then abandon the land, but the effort to remove the rails directly negatives any intention to abandon them. This is not a question of whether a quasi-public corporation can abandon its franchises or cease to operate them at will; but a claim that the track and road-bed had both been abandoned and reverted to the original owners of the land, and that the rails were such a part of the realty that they could not be removed by the purchaser at foreclosure sale, or his transferee. See on this subject Elliott on R., § 998, p. 1447; Wagner v. Cleveland R. Co., 22 Ohio St. 563, 10 Am. R. 770; 23 Am. & Eng. Enc. L. (2d ed.) 706; McNair v. Rochester R. Co., 14 N. Y. Supp. 39; Justice v. Nesquehowing Valley R. Co., 87 Penn. St. 28; Northern Central Ry. Co. v. Canton Co., 30 Md. 347, 354.

4. A carrier cannot refuse to recognize the demand of the true owner of property, made while such property is in the carrier's possession and duly pressed, and carry it away and deliver it to a person who does not own it, or his order, merely because the carrier received it from such person as consignor. There may be some authority tending to sustain this position, but we think the better view is to the contrary. It may be inconvenient for a common carrier to have two claimants for goods in his possession; but so it is for any other bailee or depositary. The rule that a carrier is estopped from denying the title of his consignor is not without exception in this State. Section 2286 of the Civil Code is as follows: "The carrier can not dispute the title of the person delivering the goods to him, by setting up adverse title in himself, or a title in third persons, which is not being enforced against him." Hutchinson on Carriers (2d ed.), § 407, thus deals with the subject: "In such cases, however, if it should turn out that such claimant has not the paramount title as against the bailor, the withholding the goods by the carrier from the latter will be treated as a conversion by him. And so, when a demand is made upon him by the adverse claimant, if the carrier should refuse to surrender the goods to him,

he will be equally guilty of a conversion, if the title of such claim-- ant should prove to be the better, and he, as the true owner, was really entitled to them. Where, therefore, the title to the property is disputed, and it becomes difficult or impossible for the carrier to determine who is entitled to them, he may be placed in a perilous position; for, no matter to which he gives up the goods, whether to the bailor, or in pursuance of his directions, or to the adverse claim-- ant, he will be in danger of being held to account for them by the other, as for a conversion, if he can show the better title. Under such circumstances, it sometimes becomes advisable for the carrier, instead of taking it upon himself to determine between the conflict- ing claims, to bring the parties before the proper legal tribunal by a bill of interpleader, in order that the parties may litigate the question of title *inter sese,* and have it there determined. He may, however, generally avoid the expense and delay of such a proceed- ing by delivering the property to the party who seems best entitled to it, upon being indemnified by him against loss in case it should turn out otherwise." The carrier may be entitled to a reasonable time to investigate. Ib. § 408. But here no time was asked.

It is suggested that if the carrier yielded to the demand of the true owner and delivered the property to the latter, he could have set this up as a defense against the person delivering the property for shipment; but that it is optional with the carrier whether he will do so, or will transport the goods, deliver them to the con- signor's order, and leave the true owner to look alone to the con- signor for redress. Is this position sound? Why can the carrier deliver the property to the true owner, unless the owner is entitled to possession, in spite of the shipment by another? Certainly a carrier can not deliver property to a person who has no right of possession, and successfully defend himself by reason thereof. If there is a right of possession, duly asserted and enforced, can the carrier disregard it? In Trans. Co. *v.* Barber, 56 N. Y. 544, it is said: "When the owner comes and demands his property, he is entitled to its immediate delivery, and it is the duty of the posses- sor to make it. The law will not adjudge the performance of this duty tortious as against a bailor having no title." In Hentz *v.* The Idaho, 93 U. S. 575, Mr. Justice Strong, in the opinion, says: "But if he [the bailee] has performed his legal duty by delivering the property to its true proprietor at his demand, he is not answer-

able to the bailor.    And there is no difference in this particular between a common carrier and other bailees." See also 5 Am. & Eng. Enc. L. (2d ed.) 196 and cit.; *Southern Express Co.* v. *Palmer,* 48 *Ga.* 85(2); *Savannah R. Co.* v. *Wilcox,* 48 *Ga.* 432; Shellenberger *v.* Fremont R. Co., 45 Neb. 491, 50 Am. St. Rep. 563; Wells *v.* Am. Exp. Co., 55 Wis. 32, 42 Am. R. 700; *Savannah R. Co.* v. *Talbot,* 123 *Ga.* 378; *Atlantic R. Co.* v. *Howard Supply Co.,* 125 *Ga.* 478.    Here the true owner was not a party to the contract of shipment and was in no way bound by it.    His property was taken and was being carried away by a carrier.    He demanded it while it was in the carrier's possession, and, upon refusal, proceeded promptly to enforce his demand by suit.

5, 6.    Section 1864 of the Civil Code declares that "A corporation charged with a duty to the public can not, by sale or otherwise, dispose of its property or franchises so as to relieve itself from liability for acts done or omitted, without legislative sanction expressly exempting it from liability."    See also *Singleton* v. *S. W. Ry. Co.,* 70 *Ga.* 465; 23 Am. & Eng. Enc. L. (2d ed.) 748(c); *Georgia R. Co.* v. *Tice,* 124 *Ga.* 459; *Hawkins* v. *Central Ry. Co.,* 119 *Ga.* 159.

Much of the confusion and diversity of rulings in regard to the liability of a railroad company for acts of another person or corporation operating its line arises from a failure to accurately and exactly apprehend the question to be determined, and then to apply the underlying principle to the particular case.    A railroad company is charged with certain duties to the public.    It can not devolve the exercise of its franchises upon another person or corporation without the express consent of the State; and it has no implied power to lease its road and franchises, and thus affect the public. If it makes a lease, or licenses another to exercise its franchises in whole or in part without express legislative authority, it remains liable for the acts of the lessee or licensee in such operation.    If, under express legislative authority, a railroad company leases its property and franchises to another, reserving no control in the use of the property or the exercise of the franchises, but the lessee has exclusive control, some courts hold that the lessor is not liable for damages arising from the negligence of the lessee, unless the statute authorizing the lease expressly or impliedly reserves a continuing liability in the lessor for the torts of the lessee.    Other courts, however, hold that the lessor is liable for the torts of the lessee, irre-

spective of whether the lease was authorized by the State or whether the liability of the lessor was reserved by statute, unless there was an express legislative exemption. See, on this subject, 2 Thompson on Negligence, § 1955; *Freeman v. Minneapolis Ry. Co.* (Minn. 1881), 7 Am. & Eng. R. Cas. 410, 413 and note. In *Central Railroad Co. v. Phinazee,* 93 *Ga.* 488, Bleckley, C. J., said: "There is no less scepticism in law than in theology. This court is called upon again and again for a fresh revelation of some legal truth which has already been revealed. After the cases of *Macon and Augusta R. R. Co. v. Mayes,* 49 *Ga.* 355, *Singleton v. Southwestern R. R. Co.,* 70 *Ga.* 464, and *Chattanooga, Rome and Columbus R. R. Co. v. Liddell,* 85 *Ga.* 482, it would seem that there could be no reasonable doubt of the liability of a chartered railroad company permitting another company to run trains over its railway, and thus to use its franchise, to respond for any damage occasioned by negligence, whether its own or that of its lessee or licensee." In *Singleton v. Southwestern R. Co.,* 70 *Ga.* 471, supra, it was said that "It requires not only the consent, but a release by the legislature, to absolve them from the obligations which they owe the public." As will be seen from the quotation above made from the Code, the principle that the lessor is not relieved from liability without legislative sanction expressly exempting it has been codified and adopted as a part of the law of this State.

It is contended by counsel for plaintiff in error in their brief that "a railroad company is responsible for its lessee's neglect to maintain and operate the road, as well as for any damage arising from a refusal by the lessee to discharge an imposed duty, or any negligence in the carrying of goods or passengers or running its trains, by reason of which damage results to a shipper or passenger or person injured by reason of such negligence," but not further; and that this case does not fall within the rule. In this view we can not concur. It is agreed that the property was loaded on the cars of the defendant and was to be transported to a distant point. The act of the lessees in receiving, transporting, and delivering the property could only be done by virtue of the franchises of the defendant company. The conversion complained of was accomplished by acts done under such franchises. The lessees could not have accomplished it at all, as it was done, except by reason of the lease

and in acting under it. For a conversion thus brought about the original company was liable.

The ruling that the lessor would not be liable to one of the servants of the lessees for an injury resulting from negligence of a fellow-servant, and not from any failure of duty on the part of the lessor (*Augusta R. Co.* v. *Killian,* 79 *Ga.* 234; *Banks* v. *Georgia R. Co.,* 112 *Ga.* 655), is quite different. The servants thus concerned were not servants of the lessor, but of the lessees. The liability of a railroad company in this State for injury to one fellow-servant by reason of the negligence of another, where he himself is free from fault, is a statutory exception to the general rule of non-liability of a master to one servant for injury arising from negligence of a fellow-servant.

7. Counsel for plaintiff in error say in one of their briefs that the action was brought against the Georgia Railroad and Banking Company, while the evidence showed that the conversion, if any, was committed by their lessees. A general motion for a nonsuit was made, but it does not appear that any distinct question was raised before the trial court, either by plea or objection to evidence or in the motion for a nonsuit, as to the necessity for alleging the lease and that the lessees committed the conversion. Aside from the question of the liability of a lessor railroad company for the acts of its lessee, what is the proper pleading in such a case? On this subject there seems to be little authority. In many cases the action was brought directly against the lessor for acts of the lessee, apparently without alleging any lease, and a recovery was sustained. See Nelson *v.* Vermont & Canada R. Co., 26 Vt. 717; Railroad Co. *v.* Barron, 5 Wall. 90; New York and Maryland Line R. Co. *v.* Winans, 17 How. 30; Ingersoll *v.* Stockbridge R. Co., 8 Allen (Mass.), 438; Railroad Co. *v.* Brown, 84 U. S. (17 Wall.) 445; Chicago R. Co. *v.* McCarthy, 20 Ill. 385; Peoria R. Co. *v.* Lane, 83 Ill. 448; Quested *v.* Newburyport & Amesbury Horse R. Co., 127 Mass. 204. In Massachusetts there is a statute (somewhat similar to that in Georgia as to reserving liability of the lessor), which provides for the power to lease, but declares that such lease or contract shall not exempt the lessor from any duties or liabilities to which it would otherwise be subject. In none of these cases was the direct point raised and decided as to whether, in a suit against a lessor for acts of the lessee, if the lease be authorized but the liabil-

ity of the lessor be reserved, the negligence or conduct complained of may be alleged directly as that of the lessor, or whether it should be alleged as that of the lessee or its agents, for which, under the law, the lessor is liable. In Missouri the Court of Appeals has several times considered the question, but the rulings have not been uniform. As holding that an allegation that the act was done by the lessor was sufficient, see McCoy *v.* Kansas City R. Co., 36 Mo. App. 445; Price *v.* Barnard, 70 Mo. App. 175, 179, 180; contra see Main *v.* Hannibal R. Co., 18 Mo. App. 388; Brown *v.* Hannibal R. Co., 27 Mo. App. 394.

Constructions of particular statutes and statements as to what is necessary to ·be averred under them throw but little light on the general question. An illustration of this will be found in Pittsburgh Ry. Co. *v.* Hannon, 60 Ind. 417.

With meager light from outside sources on the subject of what the pleadings should allege, where it is sought to hold the lessor liable for the conduct of the lessee, we turn to the decisions of this State touching upon the subject. In *Central R. Co.* v. *Brinson,* 64 *Ga.* 475, it was held that "Although one railroad may be leased to and operated by another, 'by which the latter makes itself responsible for acts done on the road leased, yet neither loses its identity, and any tort committed upon the line of the one or the other should be so alleged and proved. Especially is this true where both roads are constructed through the territory of the same county." This, however, merely holds that, where it is sought to hold a lessee company liable for its acts in operating the leased road, the fact of the lease or operation should be alleged. In *Central Railroad* v. *Whitehead,* 74 *Ga.* 441, Hall, J., held that while it might have been sufficient to have alleged that the railroad company sued controlled and operated the road where the injury occurred, without specifying the particular character of agreement under which this was done, yet where the plaintiff alleged with needless particularity or unnecessary circumstances what might have been more generally stated, he was bound to prove the fact as alleged; and therefore, having alleged that one railroad operated another under a lease, it was necessary to prove the lease, and this could not be done by parol where the lease was in writing. In his opinion he said: "It would have been sufficient to allege that the defendant controlled and operated the road, without specifying the particular character

of the agreement under which it was so held and operated." The majority of the court did not differ from this statement, but held that the fact of the lease might be proved without producing the writing, on the ground that nothing in the writing could prevent the liability of the actual carrier holding itself out to the public as such, if it were negligent. This also was a suit against a lessee. In *Heins* v. *Savannah R. Co.,* 114 Ga. 678, it was held that an action against a railroad company as a lessor or licensor of another company, for permitting such company to inflict injuries upon the plaintiff, could not be converted by amendment into an action against the same defendant as a common carrier of passengers, for inflicting the alleged injuries through its own servants and agents; and that where the allegation was that the injuries were inflicted by the agents of the lessee company, and nothing appeared to show that they were so inflicted, a nonsuit was properly granted. At first view this decision seems to bear quite directly upon the point now under consideration. In so far as it holds that, in a suit against a railroad company for an alleged injury, an allegation that it was inflicted by the servants of the licensee, for whose conduct the defendant was legally liable, could not be amended so as to strike the allegation as to the licensee's agents, and thus charge the defendant company directly with the acts of negligence alleged to have caused the injury, the decision is, to say the least, of very doubtful correctness as an original proposition; and in principle it directly conflicts with the ruling in the older case of *Central Railroad* v. *Whitehead,* supra. In that case Hall, J., held that "An amendment alleging that the railroad, on the line of which an injury was received, was held under a lease, and operated by another railroad company, against which suit was brought, was properly allowed." As to this point the other members of the court appear to have concurred with him; and they must have done so, because they affirmed the judgment of the court below. In regard to it, therefore, the decision must be treated as made by the entire bench. On the subject of amendments see also Civil Code, § 5098; *Ellison* v. *Georgia R. Co.,* 87 Ga. 699; *City of Columbus* v. *Anglin,* 120 Ga. 785; Price v. Barnard, 65 Mo. App. 649. The Justice who wrote the decision in the *Heins* case cited the case of *Central Ry. Co.* v. *Williams,* 105 Ga. 70, as directly in point. But we do not think it was so. In that case a suit was brought against the defendant,

alleging that the relation of master and servant existed between it and the plaintiff, and the gist of the action was that the master had negligently failed to provide a safe place for the servant to do his work. It thus rested upon the duties growing out of the relation between master and servant. It was sought to amend the petition by changing the whole character of the action and alleging that the plaintiff was not the servant of the defendant, but the servant of a tenant whose landlord the defendant was, and that a certain duty to repair rested on the landlord. The duty of a master to his servant and the duty of a landlord to his tenant or the servants of his tenant are two entirely different things. In the case of holding a railroad company liable for the acts of its licensee or lessee, or the servants of the latter, such liability rests on the original duty of the railroad company, and the fact that it can not of its mere volition shift its liability to another. The cause of action arises from a failure to discharge certain duties growing out of its charter and franchises, whether it seeks to discharge them itself through its own agents, or whether it delivers its property and franchises to a lessee for operation. It is not at all similar to the case of *Central R. Co.* v. *Williams,* supra

From the foregoing discussion it would seem to be better pleading, in the absence of any statutory provision, to allege whether the act complained of was committed by the railroad company itself through its own employees or by the employees of the lessee or licensee. If the point were specifically made at the proper time, perhaps it might be necessary to amend in order to adjust the pleadings to the evidence. But this could be done. Here error is assigned on the refusal to grant a general motion for nonsuit, and because the verdict was not authorized by the evidence. Almost the entire argument in this court was based upon the contention that the defendant was not liable for the conversion by its lessees, and the *Heins* case was only cited passingly in one of the briefs. The ruling in that case as to the grant of a nonsuit was merely that where the allegation was that a licensee did the injury complained of (whether necessary or not to have been made), the proof must sustain it.

Since this action was brought in 1896, an act has been passed (Acts 1899, p. 54) requiring all railroad companies leasing or which have already leased their property or line of railroad to record such

lease in each county through which the road may run, and declaring that a failure so to do will authorize any person having a right of action against such railroad or the lessee or lessees thereof, including employees, to file and prosecute the action against said railroad company in all respects as if the same were the proper party, and declaring that no plea or other defense seeking to shift liability to such lessee or lessees or denying the control or possession of such property shall avail as against such suit either by an employee or a member of the general public. Such act is of course prospective, and its passage is merely mentioned as bearing on cases arising subsequently thereto.

. 8. Counsel for plaintiff in error contend with ability and ingenuity that under the peculiar terms of the charter of the Georgia Railroad and Banking Company (Acts 1833, p. 262; Acts 1835, p. 180) it is not subject to the general rule of liability for the acts of its lessees above referred to. But the agreed statement of facts shows that it has leased the right to operate the entire railroad. If the original company leased its road and turned over the operation of its franchises to others, it is subject to the rule. When the original charter was granted, railroad building was in its infancy, and turnpikes were great public highways. Certain expressions were used which seem perhaps rather inapt to modern railroad conditions. But in view both of the charter and the general law, the legislature never intended that lessees could take the place of the original company in the operation of its cars and franchises as a railroad company, and the original company be entirely freed from liability in connection therewith.

In the brief of counsel for defendant in error an attack is made on the legality of the lease and of the possession of the lessees, because the original lease was to an individual who, it was claimed, could not exercise the franchises, and because the present holders are foreign corporations. But, under the views we have expressed above, this question is not material; since we hold that a legal lease does not operate to prevent liability. See on this subject, however, *Georgia Railroad Co.* v. *Maddox*, 116 *Ga.* 64. Under the evidence the plaintiff was entitled to recover, and there was no error in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*