## SOUTHERN RAILWAY COMPANY *v.* AMERICAN WHIP COMPANY *et al.*

1. If a passenger by railway within this State checked a trunk from his starting point to his destination, and upon reaching the latter it was found that the trunk had not arrived, whereupon the agent of the railroad company at that point agreed to forward it, upon its arrival, to the owner at another place to which he was going, but, instead of so doing, sent it to a different city and delivered it to a terminal or transfer company, which claimed storage charges for keeping it; and if subsequently the terminal company gave the trunk to the railroad company for delivery to the owner upon payment of such charges, and the railroad company refused to deliver it to the owner on demand, without such payment, this constituted a conversion, and authorized the owner to bring an action of trover, or its statutory equivalent, therefor.

2. Where an action to recover personal property was brought by two plaintiffs, and the defendant in its answer did not deny that the title was in the plaintiffs, but claimed that certain charges were due for the storage of the property, and that the plaintiffs were not entitled to possession until they were paid, offering to make delivery upon payment of the charges; and where no question of misjoinder of parties was raised by plea, by motion for nonsuit, or otherwise, after verdict in

favor of the plaintiffs the refusal of a new trial, based on the general ground that the verdict was contrary to law and the evidence, will not be reversed because the evidence did not show that the title to the property was in the plaintiffs jointly.

MAY 20, 1914.

Trover. Before Judge Edwards. Douglas superior court. June 17, 1913.

W. A. Webb and the American Whip Company brought an action against the Southern Railway Company, to recover a trunk containing buggy-whips, "to which property your petitioners claim title." It was alleged that the defendant "refused to deliver the above-described property to your petitioners, or to pay the profits thereof." The defendant, in its answer, admitted that it was in possession of the property, but did not make any denial of its ownership by the plaintiffs. It admitted that it refused to deliver the property to the plaintiffs, for the reason that the trunk was delivered to the defendant by the "Atlanta Transfer Company," which lately had possession, and which claimed a charge of 75 cents for storage, and delivered it to the defendant "to be delivered to the plaintiffs upon payment of said storage charges." The answer alleged also, that, when Webb applied for the property, the defendant's agent offered to deliver it upon the payment of the storage charge "as instructed by said Terminal Company," but he refused to make such payment, and thereupon the defendant refused to deliver the property. The defendant further averred that it had never absolutely refused to make delivery, but had always been ready to do so upon payment of the storage charges due to the Terminal Company, and it offered in the answer to make the delivery upon payment of such charges, and upon further charges of $2.45 storage claimed to be due to it·being paid.

The evidence on behalf of the plaintiffs tended to show the following, among other things: Webb checked a trunk containing buggy-whips from Clayton, Ga., to Suwanee, Ga., with the intention of going thence to Lawrenceville. The whips were used as samples in making sales. On his arrival at Suwanee the trunk was not there. He "took the matter up with" the agent, who promised that he would telegraph that night and get the whips for Webb on the evening train. They did not arrive, and Webb remained over until morning, after a train had come from Atlanta, and also one from the direction whence he came. He discussed

the matter with the agent, who agreed that he would send the trunk to Lawrenceville, so that Webb might go on from there to another town mentioned, and, if the whips did not arrive in time to be sent to Lawrenceville, that they would be sent to another named town. He proceeded to Lawrenceville by a narrow-gauge road running between it and Suwanee. The whips were not sent to that place. After going to one or two other places, he wrote to his wife in Atlanta; and upon inquiry she found the whips in the terminal station at that point. About eight days later, he arrived in Atlanta, went to the terminal station, and demanded the property. The agent refused to deliver it to him without payment of storage charges, which he declined to make. He had not authorized the whips to be sent to Atlanta. The check attached to the trunk, showing Suwanee to be its destination, had been changed so as to make Atlanta the terminal point. Webb went to Douglasville, and caused the agent at that point to send a telegram to Atlanta in regard to the trunk. It was then sent to that point with a check attached showing that it was to be delivered on payment of the charges for storage. The agent refused to deliver it without such payment, and the suit was then brought.

The evidence for the defendant tended to show the following, among other facts: When the whips did not arrive at Suwanee on the same train with Webb, he told the agent at that point, if they should arrive in time, to send them to Lawrenceville, and, if not, to send them to Atlanta. They did not arrive in time to be sent to Lawrenceville, and accordingly the agent had the check changed so as to have the trunk carried to Atlanta. The railroad from Suwanee to Lawrenceville is not a branch road of the Southern Railway, or physically connected with it, the tracks being about fifty yards apart. The Southern Railway did not transfer baggage from one road to another, but it was transferred by two porters who were working for themselves. The agent at Suwanee told Webb he would transfer this baggage to go to Lawrenceville, if it arrived in time for that purpose; and if it did not do so, that he would send it to Atlanta. The agents of the Southern Railway transferred things to the railroad running to Lawrenceville every day, making arrangements with the porters for the transfer, the interested parties paying the porters. Four or five days after the whips had been received in Atlanta, the wife of Webb made in-

quiries about them, and was informed that she could get them by paying the storage, which she declined to do, saying that the package had been lost, and that she would tell her husband and let him come and get the whips. In a day or two the trunk was ordered by telegraph to be sent to Douglasville, and was sent to that point, to be delivered on payment of the storage charge. The defendant introduced in evidence a rule, known as rule number thirty of the joint baggage tariff number 2, included in a book which contained the baggage tariff of the Southern Railway Company. It stated that the carriers which were parties thereto did not guarantee to forward baggage or other property to its destination on the same train with the passenger, or within a given or specified limit, and reserved the right to forward baggage on the same train with the passenger, or upon a preceding or following train, as the exigencies of each case might require. It also made provision for cases in which a passenger might fail to have his baggage checked before boarding the train, and might desire to have it forwarded. Another rule, known as rule number 33, from joint baggage tariff number 2, was introduced, which provided for the holding of baggage for 24 hours without storage charge, and for the amount of charge to be made after that time. The defendant also introduced rule 5 of the Georgia Railroad Commission, which authorized a storage charge where baggage was not checked within 24 hours after being received, or was allowed to remain unclaimed at destination for more than that time; and rule 6, which declares that railroad companies shall not be required to send any baggage on any train unless such baggage shall have been checked fifteen minutes before the departure of the train.

The plaintiffs elected to take a money verdict. The jury found for them $98.63. The defendant moved for a new trial, on the grounds that the verdict was contrary to law and evidence, and without evidence to support it. The motion was overruled, and the defendant excepted.

*Maddox, McCamy & Shumate* and *J. H. McLarty,* for plaintiff in error.

LUMPKIN, J. (After stating the foregoing facts.)

1. It was for the jury to determine whether they would give credit to the evidence on behalf of the plaintiffs, or to that on behalf of the defendant. Under the evidence for the plaintiffs the

defendant was guilty of a conversion. Whether or not it was bound by the agreement of its agent at Suwanee to forward the baggage to the plaintiff Webb, it could not lawfully carry the trunk to Atlanta without his consent, and there deliver it to a terminal or transfer company, with a right in the latter to charge storage upon it. Under the evidence for the plaintiffs, they could not be required to pay any storage charges for the keeping of the trunk in Atlanta; and a wrongful refusal to deliver it except upon payment of such charges amounted to a conversion, and authorized the bringing of an action of trover, or its statutory equivalent. *Liptrot* v. *Holmes,* 1 *Ga.* 381; *Phillips* v. *Brigham, Kelly & Co., 26 Ga.* 617 (71 Am. D. 227); *Georgia Railroad Co.* v. *Cole,* 68 *Ga.* 623; *Richmond & Danville R. Co.* v. *Benson & Co.,* 86 *Ga.* 203 (2a), 207 (12 S. E. 357, 22 Am. St. R. 446); *Rushin* v. *Tharpe,* 88 *Ga.* 779, 782 (15 S. E. 830); *Savannah, Florida & Western Ry. Co.* v. *Talbot,* 123 *Ga.* 378 (51 S. E. 401, 3 Ann. Cas. 1092); *Southern Express Co.* v. *Sinclair,* 130 *Ga.* 372, 373 (60 S. E. 849).

Counsel for the plaintiff in error cited *Wilensky* v. *Central of Georgia Ry. Co.,* 136 *Ga.* 889 (72 S. E. 418, 25 Ann. Cas. 271). But that decision is not applicable to the case now before us. It was there held that a shipper, who was both consignor and consignee, could not maintain against a carrier an action ex contractu for the value of the goods consigned to the carrier for shipment and not delivered, when the carrier tendered the goods at destination in a damaged condition, but refused to deliver them unless the shipper paid the usual freight charges, notwithstanding the damages to the goods amounted to more than the freight charges. Here the action does not sound in contract for the value of the goods, but in trover for their conversion. The defendant had no right to carry the property to Atlanta, or to deliver it to the terminal company there, or to authorize that company to store it and subject it to charges. It had no right, when called on by its passenger, to refuse to deliver his baggage to him without the payment of such illegal charges.

It did not appear that the rules of the railroad company called joint tariff rules were binding on the plaintiffs, or, if so, that they furnished any valid defense, under the facts of the case. Nor does the rule of the railroad commission, which authorizes storage charges after 24 hours, confer the right upon a railroad company to

carry a passenger's baggage, without his consent, to the wrong place, some thirty miles distant from the point to which it was checked, and to deliver it to another company to hold and charge storage upon it.

2. It was contended that the action was brought jointly by the American Whip Company and Webb, and that the evidence did not show a joint ownership of the property. The action was brought by the two plaintiffs claiming title to the property, and alleging a refusal on the part of the defendant to deliver it to them. The answer did not controvert their joint ownership, but practically admitted it, setting up as the reason for refusing to make delivery "to the plaintiffs" that the Atlanta Terminal Company had a storage charge against the property, which had to be paid before delivery. There was no plea of misjoinder of parties, and no motion for a nonsuit on the ground that a joint title was not shown. Under these circumstances, after a verdict in favor of the plaintiffs, the making of a motion for a new trial on the general ground that the verdict was contrary to law and evidence, and the overruling of it by the trial judge, this court will not reverse the judgment on the ground that the evidence did not show a joint title. The remark of Blandford, J., in *Wrightsville & Tennille R. Co.* v. *Holmes,* 85 *Ga.* 668 (11 S. E. 658), to the effect that where the legal title to land was in one person, and the equitable title in another, an action of trespass to the land, brought jointly in the names of both, would seem not to be a basis for recovery, there being no joint title, does not constitute a distinct ruling that a verdict would be set aside on that ground, on a general assignment that the verdict was contrary to law and evidence, if no point as to parties had been previously made. *Western & Atlantic R. Co.* v. *Tate,* 129 *Ga.* 528 (59 S. E. 266). But if such had been the ruling, it would not apply to the facts of this case.

> *Judgment affirmed. All the Justices concur.*