## JONES et al. v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Fifth Circuit. November 25, 1922.)

No. 3920.

1. **Railroads ⬤⟞72(1)—Condition in conveyance of right of way fulfilled.**

Under conveyances of land for use as right of way for a railroad, with a provision that, should such use cease, the title should revert, so long as the land is used for such purpose by anyone, the condition is fulfilled.

2. **Railroads ⬤⟞72(8)—Reverter clause in deed not effective without legal action.**

Under conveyances, of land for use as right of way for a railroad, with a provision for a reversion of title if such use should cease, legal action is necessary to revest title in the grantors, and until such action the rails and fastenings placed thereon by a railroad company remain its property and subject to its removal.

3. **Railroads ⬤⟞82(5)—Company may remove rails from abandoned roadbed.**

Where operation of a railroad has been permanently stopped, there is no presumption of a purpose by the railroad company to abandon the rails thereon, and it may remove them, though it abandons the roadbed.

In Error to the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Actions at law by H. M. Jones, administrator of John W. Ball, by John P. Ball, and by J. K. Shippey against the Southern Railway Company, consolidated for hearing. Judgments for defendant, and plaintiffs bring error. Affirmed.

Henry A. Alexander and Arthur Heyman, both of Atlanta, Ga., for plaintiffs in error.

Wharton O. Wilson, Sanders McDaniel, and Edgar A. Neely, all of Atlanta, Ga., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The plaintiffs in error were plaintiffs, in the trial court, in three several suits, which had been consolidated for trial, and were thereafter consolidated for review by writ of error, wherein they sought to recover certain quantities of steel rail, with their fastenings, which plaintiffs asserted were their property, and of which the defendant Southern Railway Company was in possession. Said possession was alleged to have been unlawfully taken in the year 1917. A demand on the Southern Railway Company for said property, and its refusal to comply, were also alleged.

The record showed that in the years 1902 and 1904 S. Morgan-Smith Company, a corporation, acquired from plaintiffs or their predecessors in title, certain strips of land in fee simple by four deeds. Three of these deeds contained a clause reciting that, in the event the said strip of land should cease to be used for a right of way for either a steam or electric railroad, the same should revert to the grantor or his heirs. The last of said deeds contained no such clause. Each deed stated that the land conveyed was a right of way for a railroad. S. Morgan-Smith Company in 1905 conveyed all of said parcels of land

to the Roswell Railroad Company. This deed contained a like clause of reversion of said property, if it ceased to be used as the right of way of a steam or electric railroad.

The Roswell Railroad Company built a track on said right of way from its main line to an electric plant being erected on the Chattahoochee river. The Southern Railway Company was the beneficial owner of a large part of the stock of the Roswell Railroad Company and a very large creditor thereof. While a separate organization was kept up by the Roswell Railroad Company, it was practically operated by said Southern Railway Company.

An effort was made to take up this track in 1910, and the same was resisted, and resulted in an agreement to replace the portion taken up. The railroad ran, at one point, across a public road which went over on a bridge. In 1917 the public authorities determined to carry the public road on a solid embankment, which would block the railroad, and thereupon the Southern Railway Company removed the rails and fastenings. The charter of the Roswell Railroad Company had expired in 1910, but the operation of said railroad was continued until after 1917. In 1920 a bill was filed to pay the debts and liquidate the assets of the Roswell Railroad Company, as a dissolved corporation, and a receiver appointed thereunder.

At the conclusion of the evidence in the present case, the court granted a compulsory nonsuit. The question in this case is whether, at the time of the removal of said rails and fastenings by the Southern Railway Company, the title to and possession of the property described in the deeds from plaintiffs, including said rails and fastenings, had revested in the several plaintiffs, so that the action of the Southern Railway Company amounted to a conversion of said rails and fastenings.

There is no pretense that the track was built on property which was the property of plaintiffs; but it is insisted that at the time of the removal of said rails there had been an abandonment of the property for railroad purposes, and that, while the rails could have been removed before such abandonment, upon such abandonment they became the property of the plaintiffs. If at the time of their removal they were assets of the expired Roswell Railroad Company, this would not help the plaintiffs; they must recover on the strength of their own right.

[1] That the expiration of the charter of the Roswell Railroad Company did not terminate these conveyances, or the right to continue the use of this property for railroad purposes, whether they were only easements or of the land described, is quite evident. The road of that company was assets subject to be sold for the payment of its debts and distribution among its stockholders. Code of Ga. 1910, § 2245. The purchaser could have secured a franchise to operate a railroad and have continued such use. Indeed, so far as this branch was concerned, the property had been conveyed by plaintiffs or their predecessors to S. Morgan-Smith Company (not the railroad company), and its use by any private individual for railroad purposes would have satisfied the conditions of the deeds. Minneapolis v. Minneapolis St. Rwy. Co., 215 U. S. 417, 30 Sup. Ct. 118, 54 L. Ed. 259; Davis v. Memphis, etc.,

R. Co., 87 Ala. 633, 6 South. 140; Muncie & Portland Traction Co. v. Citizens' Gas & Oil Min. Co., 179 Ind. 322, 100 N. E. 65.

[2] There is no evidence that there had been any reverter of these lands, or easements, to the plaintiffs in 1917. No legal action had been taken by the plaintiffs to oust the railroad company in possession. Even had a breach of condition occurred, it would not revest title by mere operation of law. Peacock & Hunt Naval Stores Co. v. Brooks Lumber Co., 96 Ga. 542, 545, 23 S. E. 835. The track was still on the right of way, as it was when restored by agreement in 1911. Had the railroad, or the receiver thereof, then undertaken to remove these rails and fastenings, they would have been property of the railroad company, and not of the plaintiffs.

[3] Where the operation of a railroad has been permanently stopped under conditions like those in the present case, there is no presumption of a purpose to abandon the rails and fastenings thereon, and a purpose to abandon the roadbed evidences no purpose to abandon such rails to the owners of the fee. In a very similar case an electric railroad company was granted a right of way by certain property owners for a branch line. The branch line was constructed, passing under a steam railroad by means of a temporary culvert, which the electric company was to replace with a permanent one. The electric company failed, and its property was sold under foreclosure. The purchaser declined to replace said temporary culvert, and the steam railroad filled it up with earth, thus permanently preventing the use of the branch line. The purchaser undertook to remove the rails, and was prevented by an interlocutory injunction. Pending this suit, the property owners took up and sold the rails and delivered them to a common carrier for delivery to their vendee. The purchaser of the branch line demanded the rails of the carrier, and on its refusal to deliver brought suit for them. The Supreme Court of Georgia, in holding that such purchaser could recover, said:

"In the case now before us there is no evidence of any intention on the part of the purchaser to abandon to the landowners the rails and fastenings, and the doctrine of the abandonment of trade fixtures has no application. There may have been an intention to take up the rails and then abandon the land, but the effort to remove the rails directly negatives any intention to abandon them. This is not a question of whether a quasi public corporation can abandon its franchises or cease to operate them at will, but a claim that the track and roadbed had both been abandoned and reverted to the original owners of the land, and that the rails were such a part of the realty that they could not be removed by the purchaser at foreclosure sale, or his transferee. See on this subject Elliott on R. R. § 998, p. 1447; Wagner v. Cleveland R. Co., 22 Ohio St. 563, 10 Am. Rep. 770; 23 Am. & Eng. Enc. L. (2d Ed) 706; McNair v. Rochester R. Co., 14 N. Y. Supp. 39; Justice v. Nesquehowing Valley R. Co., 87 Pa. St. 28; Northern Central Ry. Co. v. Canton Co., 30 Md. 347, 354." Georgia Railroad & Banking Co. v. Haas, 127 Ga. 187, 191, 56 S. E. 313, 314 (119 Am. St. Rep. 327, 9 Ann. Cas. 677).

Where a railroad company acquired a right of way from a life tenant only, on the death of the life tenant and termination of the company's estate, such company may remove its tracks, or acquire by condemnation an estate in the same from the remainderman according to its value, without taking into consideration the rails and fastenings

thereon. Charleston & Western Carolina Railway Co. v. Hughes, 105 Ga. 1, 30 S. E. 972, 70 Am. St. Rep. 17. We therefore conclude that the plaintiffs had neither the property in, nor right of possession to, said rails and fastenings, and the judgment of nonsuit was correct.

The judgment of the District Court is affirmed.